**LEYBOLD–HERAEUS TECHNOLO-GIES, INC., (LHT), Plaintiff,**

v.

**MIDWEST INSTRUMENT COMPANY, INC., (Minco), Defendant,**

v.

**LEYBOLD–HERAEUS GmbH, (LHG), Additional Defendant on Counterclaims.**

**No. 85–C–0315.**

United States District Court, E.D. Wisconsin.

May 21, 1987.

Jon P. Christiansen, Foley & Lardner, Milwaukee, Wis., Thomas A. Beck, Felfe & Lynch, and Gregory F. Hauser, Walter, Conston, Alexander & Green, P.C., New York City, for plaintiff.

Henry C. Fuller, Jr., Fuller, House & Hohenfeldt, S.C., Milwaukee, Wis., William J. Schramm, Burton, Parker & Schramm, Mt. Clemens, Mich., for defendant.

## MAGISTRATE'S RECOMMENDATION TO THE HONORABLE THOMAS J. CURRAN

### RE: PRIVILEGED DOCUMENTS

ROBERT L. BITTNER, United States Magistrate.

The parties will be referred to herein by the acronyms set forth behind each of their names in the above caption.

## PROCEDURAL HISTORY

This is a patent infringement case relating to U.S. Patent No. 3,967,505 ("the '505 Patent") issued by the United States Patent Office to LHT on July 6, 1976 covering a device used to sample the hydrogen content of molten steel. Minco defends this action, claiming the '505 Patent is invalid, non-infringed and unenforceable, and was obtained by fraud. It also alleges violations of Sections 1 and 2 of the Sherman Antitrust Act, unfair competition, and a conspiracy by LHG, LHT, and Leco Corporation (hereinafter referred to as Leco) to monopolize the market of devices for obtaining hydrogen samples of the molten steel. LHT has a corporate relationship with LHG and LHG is brought into the action as an additional party defendant by Minco's counterclaim.

In the discovery process, Minco moved to compel the production of documents as they relate to the following issues: 1) the basis for the commencement of LHT's suit against Leco, 2) the basis for the commencement of LHT's suit against Minco, 3) the alleged conspiracy between LHT, LHG, and Leco against Minco, and 4) the alleged withholding of material of prior art from the patent office in the prosecution of the '505 Patent.

Pursuant to Honorable Thomas J. Curran's, United States District Judge, order of February 13, 1987, LHT–LHG have filed with this Court two (2) exhibit binders, A and C, for *in camera* inspection containing certain documents to which they claim privilege; and therefore, not subject to discovery, either as attorney-client communications and/or attorney work product. Exhibit Binder A contains ninety-six (96) items. Items numbered 1, 3–5, 7–17, 19–23, 26, 34–35, 37, 38, 41, 87, 94, and 96 relate to LHT–LHG's prior lawsuit and settlement negotiations with Leco. Items No. 24, 25, 27–33, 36, 39, 42–86, 88–93, and 95 relate to LHT–LHG's lawsuit against Minco. Exhibit Binder C contains thirty-five (35) items relating to patent applications and prosecutions, either for "the '505 Patent" or corresponding patents in other countries. All documents contained in Exhibit C involve LHT German counsel Attorney Zapfe who either prepared or received such documents.

Minco contends LHT–LHG have failed to fulfill their burden of establishing the documents exhibited are protected by the attorney-client privilege because: 1) the privileged communications have not been submitted to the Court under "affidavit" and it has not been established that the attorneys involved were, in fact, acting as lawyers; 2) many of the alleged privileged communications involving settlement negotiations with Leco do not disclose the attorneys involved were acting as lawyers; 3) LHT–LHG waived the privilege by selectively picking and choosing because they have presented to Minco for discovery some documents which could be claimed privileged (Items 2 and 4 of Exhibit A and Items 5, 7, 19, and 25 of Exhibit C), while resisting discovery of other documents which Minco presumes are detrimental to their case; and 4) they have named Attorneys Hemmingway and Zapfe as witnesses; and therefore, have waived the privilege as to work product and communications of those attorneys.

Minco further asserts that, even if LHT were to demonstrate the exhibits are attorney-client communications and/or attorney work product, a *prima facie* case of fraud exists which abrogates the privilege. Minco claims it has shown enough to establish a *prima facie* case as to fraudulent patent procurement, bad faith in the instigation of the present lawsuit and a former lawsuit against Leco, and of a conspiracy between LHT–LHG and Leco to create a monopoly. It asserts the activities of LHT–LHG lawyers are at the heart of these issues and have been raised by its affirmative defense and counterclaim.

In response, LHT–LHG assert they have met the burden to establish documents are privileged in that they have complied with Judge Curran's order for production, argument, and citation. They further argue an "affidavit" is not requisite. Furthermore, LHT–LHG argue that any question as to Attorney Zapfe's status as a German patent attorney, rather than as a patent agent, has been clarified by affidavit of Zapfe and the opinion letter of the German Bar Association of Patent Attorneys of record so that his communications qualify as privi-

leged. LHT–LHG maintain all of the documents which they have submitted to the Court fall within the definition of privileged because they relate to the prosecution of patent applications, conduct, or settlement of the Leco and Minco lawsuits; all matters for which the attorneys were employed, and furthermore, a great portion of the documents submitted are irrelevant to the issues of this lawsuit. It further contends Minco has not sustained its burden of establishing a *prima facie* fraud to except the submitted documents from the privilege.

## DISCUSSION

In addressing the issues raised by the parties in this discovery dispute, the Court will view those issues and inspect the documents *in camera* with the perspective of Minco's arguments in mind, adhering to the instruction in *Hercules, Inc. v. Exxon*, 434 F.Supp. 136, 155 n. 17 (D.Del.1977), which directs the inspecting court to keep in mind that the submissions are not available to defendant Minco's inspection and, presumably if they were, counsel would argue strenuously in favor of the discoverability of the documents. Therefore, the Court should examine with particular care all of the documents which would otherwise be protected by an attorney-client privilege or work product immunity for subject matter and content, in light of the documentary evidence presented by the defendant. This Court will also address the various issues in the form and manner they were presented by Minco.

### Absence of Affidavit

Minco first argues that, in order to fulfill its burden, it was necessary for LHT–LHG to submit documents for which they claim privileged under "affidavit." Although there are cases in which courts have stated the submissions should be by way of affidavit (*see International Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 93 [D.Del.1974]; *North Amer. Mtg. Inv. v. First Wis. Nat. Bk. of Milwaukee*, 69 F.R. D. 9, 12 [E.D.Wis.1975]), this Court does not find those cases to be authoritative for

the proposition that an affidavit is essential. Rather, the attorney for the party claiming the privilege must make submissions with clarity, buttressed by argument and citation sufficient for the court to make a decision as to each submission for which the privilege is claimed. *See Delozier v. First Nat. Bank of Gatlinburg,* 109 F.R.D. 161, 162–63 (E.D.Tenn.1986).

This Court views the content and manner of submission by LHT–LHG in this case as sufficient to allow it to make a recommendation on the issue of privilege. The absence of the affidavit does not detract from the credibility of the submissions.

### Insufficient Identification

Minco complains LHT–LHG's submissions do not sufficiently identify whether the attorneys involved in the alleged attorney-client communications were acting and functioning as lawyers as to subject matter at the times the communications took place.

■ As a prologue to enumerating the submissions which are claimed to be privileged, LHT has identified the various persons contained therein. This Court finds such identification provides a threshold definition of the participants as lawyers, acting in an attorney-client relationship. Examination of the documents themselves bears out, although difficult to ascertain some instances, that all of the communications were in relation to legal matters in which lawyers were acting in the capacity of an attorney. *See North Amer. Mtg. Inv. v. First Wis. Nat. Bk. of Milwaukee,* 69 F.R.D.,at 11. To the extent LHT–LHG have miscategorized certain memos to the file prepared by its attorneys as being protected by the attorney-client privilege, they may be subject to the work product exception. *See Sneider v. Kimberly-Clark Corp.,* 91 F.R.D. 1, 6 (N.D.Ill.1980).

The Court further finds any question regarding the status of Attorney Hans Zapfe, the German patent attorney, has been clarified by the affidavit supplied by LHT and finds Attorney Zapfe falls within the definition of an attorney to which the privilege applies. *See Renfield Corp. v. E. Remy Martin & Co.,* 98 F.R.D. 442, 444 (D.Del. 1982).

### Waiver by Disclosure

■ Minco claims that, because LHT and LHG claim to be separate entities, they cannot now assert that they are related companies as a means to defeat a waiver of privilege as to attorney-client communications which they have exchanged. It does not seem to be contested that LHT and LHG are related as parent and subsidiary companies. Disclosure of privileged information to related companies does not constitute a waiver of the privilege. *Duplan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1184–85 (D.S.C.1975). Disclosure of privileged information by an attorney to actual or potential codefendants or to their counsel in the course of a joint defense does not constitute a waiver of the attorney-client privilege. *United States v. McPartlin,* 595 F.2d 1321, 1336 (7th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979). The protection of joint defense exception extends to protection against disclosure of communication between various codefendants and their attorneys in civil proceedings. Even if such allies later become estranged, they could nonetheless argue entitlement to jointly invoke the attorney-client privilege to protect shared communications from disclosure at the request of a third party. Thus, this Court concludes disclosure of the allegedly privileged communication between LHT and LHG does not abrogate the privilege.

### Waiver by Making Attorneys Witnesses

■ Minco claims the privilege was abrogated as to the communications and/or work product of Attorneys Hemmingway and Zapfe when they were named as witnesses by LHT–LHG. Attorney Zapfe has been named for the purposes of testifying as to the good faith commencement of the actions against both Leco and Minco, as well as to prior art references; whereas Attorney Hemmingway will testify solely regarding the commencement of the Leco and Minco litigation.

In *Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926 (N.D.Cal.1976), attorneys were to testify as to the legal advice they rendered to defendants in connection with the prosecution of prior actions. There, the court held disclosure of a part of a privileged communication is a waiver as to the remainder of the privileged communication about the same subject, pointing out that these documents were necessary to enable the plaintiffs to cross-examine the attorney witnesses.

It appears to this Court from examination of the documents either drafted by or communicated to Hemmingway and/or Zapfe that many of them do indeed relate to the subjects to which it is contemplated that these attorneys will testify. In the context of this case, the knowledge of prior art cannot be disengaged from the issue of good faith in the commencement of the Leco and Minco lawsuits, because the very essence of good faith hinges on the question of whether they knew of prior art rendering their patent invalid. Item 19 of Exhibit C (Exhibit N of Minco's Answering Brief) brings this relationship sharply into focus.

Upon naming two of their attorneys as witnesses, LHT and LHG assumed the risk that their claim of attorney-client communication and/or attorney work product would be abrogated. It is difficult for this Court to anticipate the parameters of the testimony of these two (2) attorneys, but certainly Minco would be disadvantaged in cross-examining them, if it does not have available the basis for their testimony. Accordingly, this Court is of the view that many of the documents which Attorneys Hemmingway and Zapfe participated in, either as a recipient of communication or the communicator as to prior art or as to the good faith belief in the validity of the patents in question and the good faith in maintaining the lawsuits of both the present litigation and the Leco case, should be made available for discovery to Minco.

### Waiver By Selectivity

■ Minco claims LHT–LHG have lost their privilege by voluntarily disclosing selected otherwise privileged communications, while resisting the disclosure of other arguably privileged communications which are detrimental to them. Particularly, Minco points to LHT–LHG's surrender to it of otherwise privileged items, to-wit: Exhibit C, Item 5 (memo from Attorney Zapfe to an attorney who is the head of LHG's legal department, as well as an LHG officer, regarding the Italian patent application), Item 7 (a memo from Attorney Zapfe to the same parties regarding the German patent application), Item 19 (a memo from the inventor of the sampling device which was the subject of the '505 Patent to Attorney Zapfe regarding the German patent application as corresponding to an earlier Swiss patent application) and Item 25 (a letter and attachment from Attorney Zapfe to an LHG employee regarding the Japanese patent application in relation to other patents) and Exhibit A, Item 2 (memorandum from Attorney Zapfe to an LHG officer) and Item 5 (telex with handwritten notes from LHG's American counsel to its German counsel Zapfe regarding the licensing of Leco).

■ This Court agrees with Minco's assertion that LHT–LHG cannot selectively disclose portions of privileged communications or give testimony favorable to themselves, without concomitant disclosure of other unfavorable portions of the privileged communications relating to the same subject. *See Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. at 929. *Teachers Ins., Etc. v. Shamrock Broadcasting Co.*, 521 F.Supp. 638, 641 (S.D.N.Y.1981); *First Federal Savings & Loan v. Oppenheim, Appel, Dixon & Co.*, 110 F.R.D. 557, 567 (S.D.N.Y.1986); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. at 1161. LHT–LHG's actions in this action are particularly suspect since they have only recently allowed disclosure of Exhibit C, Item 19, after initially alleging that it was privileged.

Furthermore, under Rule 612 of the Fed. R.Evid., LHT–LHG cannot allow their witnesses to review such documents to refresh their recollections for the purpose of testifying, without allowing Minco to inspect

the documents prior to trial. *Omaha Public Power Dist. v. Foster Wheeler Corp.*, 109 F.R.D. 615, 616–17 (D.Neb.1986); *People v. Scott*, 29 Ill.2d 97, 193 N.E.2d 814 (1963). *See also, Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. at 929. Accordingly, this Court concludes that LHT–LHG have waived their privilege as to any communications regarding patent applications and/or the licensing of Leco; the subject matter of materials which have been heretofore selectively disclosed.

### Prima Facie Showing of Fraud

Minco next argues that, even if LHT–LHG were able to demonstrate that their claim to attorney-client privilege has merit, their improper conduct in procuring the '505 Patent and asserting it against competitors has stripped away any privilege entitlement. Minco alleges LHT–LHG has engaged in improper conduct by fraudulently acquiring the '505 Patent, enforcing that patent against Minco, and finally, by conspiring with Leco to restrain trade in violation of the antitrust laws, as evidenced by the settlement of the Leco infringement lawsuit.

■■■ Documents which otherwise satisfy criteria for attorney-client protection may be discoverable if made in furtherance of a crime or fraud. *See Hercules, Inc. v. Exxon Corp.*, 434 F.Supp. at 155. As the party seeking discovery of the documents, Minco has the burden of making a *prima facie* showing that LHT–LHG was engaged in or planning a crime or fraud when it sought the legal advice. *See In re Murphy*, 560 F.2d 326, 338 (8th Cir. 1977). Secondly, Minco must show the communications were made in furtherance of the fraud. *Hercules, Inc. v. Exxon Corp.*, 434 F.Supp. at 155. The "crime-fraud" exception applies when a patent has been fraudulently procured in the U.S. Patent Office. *American Optical Corp. v. United States*, 179 U.S.P.Q. 682, 684 (Ct.Cl. 1973); *Union Carbide Corp. v. Dow Chemical Co.*, 619 F.Supp. 1036, 1051–52 (D.Del. 1985). The exception is also applicable where a lawsuit is based upon an invalidly obtained patent. *Kockums In-*

*dustries Ltd. v. Salem Equipment, Inc.*, 561 F.Supp. 168 (D.Ore.1983). It also applies when alleged attorney communications are made in furtherance of a business tort such as an antitrust violation. *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. at 1146; *Kockums Industries Ltd. v. Salem Equipment, Inc.*, 561 F.Supp. at 173. A *prima facie* showing of fraud or crime need not be such as to actually prove the disputed fact, but it must be such as to subject the opposing party to the risk of nonpersuasion, if the evidence as to the disputed facts is left unrebutted. *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1220 (4th Cir.1976).

■■■ Minco has established a *prima facie* case that during the prosecution of the '505 Patent, LHT–LHG intentionally withheld from disclosure to the U.S. Patent Office clearly material prior art that had been cited and applied against the West German counterpart application. This fact is evinced by a memorandum authored by the inventor of the hydrogen sampling device on July 7, 1974 (Item 19 of Exhibit C [submitted as Exhibit N to Minco's answering brief]), which discusses three (3) examples of prior art—the Block reference, the Hackett Patent, and the Collins Patent; all of which, at least inferentially, were relevant prior art as to the '505 Patent application. Nonetheless, disclosure of such relevant information was not made to the U.S. Patent Office during a period of over two (2) years during which the inventor and the German attorney for LHT–LHG had knowledge of such relevant information. This conduct constitutes common law fraud when, as here: 1) the patentee intentionally withholds material facts from the patent office, and 2) the patent office acts in reliance that all material facts known to the patentee have been disclosed. *Union Carbide Corp. v. Dow Chemical Co.*, 619 F.Supp. at 1052. Similarly, such fraud also constitutes inequitable conduct, making all of the patent claims unenforceable. *J.P. Stevens & Co. v. Lex Tex Ltd., Inc.*, 747 F.2d 1553 (Fed.Cir.1984), *cert. denied*, 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985). *J.P. Stevens* is further instructive as to the proposition that, where prior art is applied

to reject claims in a foreign counterpart application, they must be disclosed to the U.S. examiner. Although LHT–LHG, by argument in their brief, attempt to defuse the impact of this nondisclosure upon the '505 Patent application and issuance; nevertheless, evidence of this nondisclosure amounts to a *prima facie* showing until such time as evidence is produced at trial that the nondisclosed prior art was indeed innocuous and had no bearing upon the eventual issuance of the '505 Patent. In the present posture of this case, it cannot be concluded as a matter of law that disclosure of the referenced prior art at the time of the patent application would not have impacted upon the issuance of the patent.

The conclusion of the existence of a *prima facie* showing of fraud in a patent procurement also provides a reasonable inference that the Leco and Minco actions were commenced in bad faith. If LHT–LHG were aware that the '505 Patent could not survive litigated scrutiny, then commencement of actions for infringement of that patent against either Leco and/or Minco would amount to bad faith. Likewise, settlement of the Leco litigation, if commenced in bad faith, raises the further inference that accommodation was reached with Leco which would amount to a conspiracy in restraint of trade and the creation of a monopoly as to the molten steel sampler. Therefore, this Court also concludes evidence exists in this case which, if not rebutted by LHT–LHG, subjects them to the risk of nonpersuasion on the issues of bad faith litigation commencement, as well as a conspiracy to monopolize and restrain trade. Thus, all of the Leco exhibits, even though occurring subsequent to the issuance of the '505 Patent, are discoverable as exceptions to the attorney-client communications and/or attorney work product privilege. In so concluding, this Court notes that Judge Curran has heretofore apparently ruled that Minco's antitrust counterclaim was not subject to dismissal upon motion for summary judgment. (*See* Judge Curran's order of November 4, 1986.) Although this Court has concluded that Minco has established a *prima facie* case of bad faith by LHT–LHG in

the commencement of the litigation against it, none of the Minco documents predate the commencement of that action; and thus, are not subject to discovery under the fraud exception. The majority of the Minco documents are concerned with the actual conduct of LHT–LHG's of the litigation of the instant lawsuit with Minco.

### *Irrelevancy of Documents*

In resisting the discoverability of certain documents which it has submitted for *in camera* inspection, LHT–LHG also assert some of the documents sought by Minco are irrelevant.

This Court will not consider LHT–LHG's argument in this regard. First of all, Judge Curran's directive to this Court was limited to a request that it conduct an *in camera* investigation of submitted documents to determine whether they were privileged. It did not include a directive to assess the relevancy of such documents. In fact, it may be inferred that the relevancy of such documents to the litigation is presupposed. Moreover, given the broad definition of relevancy in the context of discovery proceedings (Fed.R.Civ.P. 26[a]), this Court would find any objections of that nature made by LHT–LHG regarding the documents which it has submitted for *in camera* inspection to be bootless.

### *Summation*

Based on this Court's *in camera* review of the documents contained in Exhibit A, this Court concludes that Items 1–27, 29, 32–33, 35, 37, 41, 43, 60–61, 80, 84, and 87 do not qualify for either attorney-client privilege or attorney work product protection; and therefore, are discoverable and should be produced by LHT–LHG. Such documents are discoverable, on the basis of either LHT–LHG's waiver of the privilege by voluntarily selective disclosure, or the designation of Attorneys Zapfe and Hemmingway as witnesses who will testify at trial, as well as certain of such documents also being subject to discovery based on Minco's *prima facie* showing of fraud by LHT–LHG. For the same reasons, all documents contained in Exhibit C are subject

to discovery. The parties' positions regarding sanctions are not addressed by this recommendation because this Court interprets Judge Curran's order not including reference of that issue.

### CONCLUSION

NOW THEREFORE, IT IS HEREBY RECOMMENDED that the United States District Judge enter an order requiring LHT–LHG to disclose to defendant Minco documents 1–27, 29, 32–33, 35, 37, 41, 43, 60–61, 84, and 87 submitted to this Court in Exhibit A, as well as requiring the disclosure of the entirety of Exhibit C.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and Local Rule 13.03 (E.D.Wis.), written objections to the foregoing recommendation must be filed in duplicate with the Clerk of Court within ten (10) days from the date hereof. Failure to so file will result in a waiver to your right to appeal.