HARTZ MOUNTAIN INDUSTRIES, INC. AND SUBSIDIARIES, AND THE HARTZ GROUP, INC., AS SUCCESSOR COMMON PARENT CORPORATION OF AFFILIATED GROUP, AND LEONARD STERN AND JUDITH PECK, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 353-88. Filed October 31, 1989.

*Stuart E. Siegel, James T. Fuller,* and *S. L. Warhaftig,* for the petitioners.

William S. Garofalo, William F. Halley, and Julia A. Cannarozzi, for the respondent.

## OPINION

FAY, *Judge:* This case was assigned to Special Trial Judge Carleton D. Powell pursuant to the provisions of section 7443A(b)(4) of the Internal Revenue Code of 1986 and Rule 180 et seq.[1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

### OPINION OF THE SPECIAL TRIAL JUDGE

POWELL, *Special Trial Judge:* Respondent determined deficiencies in and additions to the corporate petitioner's tax liability for taxable years 1976 through 1979, and determined deficiencies in the individual petitioner's tax liability for taxable years 1977 and 1978. Hartz Mountain Industries, Inc., and Subsidiaries and the Hartz Group, Inc. (hereinafter Hartz or petitioner), maintained its principal offices in Secaucus, New Jersey, when it filed its petition. Leonard Stern and Judith Peck, who were husband and wife and filed joint Federal income tax returns during the taxable years in dispute, both resided in New York, New York, when they filed their petition. The individual petitioners filed a joint petition with the corporate petitioner because both parties' tax liabilities arose out of the same series of transactions and occurrences, and there are common questions of law and fact relating to the corporate and individual petitioners. The individual petitioners, however, are not involved in the matters currently under consideration.

This case is before the Court on respondent's motion to compel the production of documents filed on March 1, 1989. A brief summary of the facts leading up to respondent's motion is as follows. Hartz is a producer of pet products. In 1967, A. H. Robins and Co. (Robins), through its subsidiary Miller-Morton Co., acquired Sergeant's, a pet products company. In February of 1978, Robins filed a civil com-

---

[1]All section references are to the Internal Revenue Code of 1954 as amended and as in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise provided.

plaint in the Eastern District of Virginia alleging that Hartz committed certain antitrust violations which harmed Robins' pet products company.

In 1979, after settlement discussions, Hartz agreed to pay Robins $42.5 million, without interest, over 5 years. The settlement agreement entered into by Hartz and Robins did not allocate the payment to any specific damages incurred by Robins. For Federal income tax purposes, Robins characterized the $42.5 million as a payment for the loss of a capital asset. Hartz, to the contrary, alleged that the payment was made to compensate Robins for past lost income, and claimed the entire amount as an ordinary deduction under section 162. Respondent contends that Hartz's payment to Robins resulted in a capital rather than an ordinary loss. This issue will be referred to as the antitrust issue.

A second issue involves Giret Desruors et Cie (Giret), a French company engaged in the pet products business. Hartz purchased 80 percent of Giret's stock in 1973. In 1976, Hartz terminated Giret's business and sold the bulk of Giret's assets to a competitor. On its 1976 Federal income tax return, Hartz claimed an ordinary loss of $2 million based on its assertion that the Giret stock was worthless.

On May 16, 1988, Hartz filed a motion for partial summary judgment for both the antitrust and Giret issues. Petitioner submitted two affidavits from Arthur Andersen, petitioner's in-house counsel, in support of its motion for partial summary judgment. In paragraph 3 of his supplemental affidavit, Mr. Andersen discussed and purportedly set forth petitioner's internal position in the antitrust litigation:

The sole position of Hartz was that any monetary damages payable to Robins and Miller-Morton in settlement of the antitrust case could relate solely to alleged lost profits of Robins and Miller-Morton as a result of Hartz' alleged antitrust violations. It was the internal position of Hartz that no substantial monetary settlement would be agreed to on the basis of alleged injury to goodwill or other alleged damage to capital assets.

By letter dated July 8, 1988, respondent requested petitioner to produce certain documents. On September 6, 1988, this Court ordered informal discovery to commence

immediately and ordered formal discovery to commence, if necessary, on December 1, 1988.

On December 27, 1988, respondent served upon petitioner respondent's first request for the production of documents. In his request, respondent requested documents, notes and minutes of board meetings pertaining to the negotiations, and settlement agreement entered into between Hartz and Robins. On January 27, 1989, respondent served upon petitioner respondent's second request for the production of documents in which respondent requested documents pertaining to the Giret issue. Petitioner has produced approximately 80 boxes of documents in response to respondent's requests.

On January 11, 1989, petitioner informed respondent that certain documents were being withheld based on the attorney-client privilege and work product doctrine. Respondent then filed his motion to compel. Generally, petitioner has withheld deposition transcripts and summaries and other memoranda pertaining to settlement negotiations between Hartz and Robins.

Pursuant to this Court's March 24, 1989, order, petitioner submitted 13 documents (or sets of documents) to this Court for an *in camera* review. Petitioner claims that all documents are protected by either the attorney-client privilege or work product doctrine, or both. Respondent agrees that a memorandum concerning the Giret issue (designated as HP000161-167) is not discoverable. Respondent argues that the remaining documents, all of which pertain solely to the antitrust issue, are not protected from discovery. A hearing was held on respondent's motion on May 8, 1989, in Washington, D.C.

This Court has reviewed *in camera* the documents submitted by petitioner. For the reasons set forth below, we find that (1) petitioner has waived the attorney-client privilege for all documents except document HP000001-02, and (2) petitioner has waived protection afforded by the work product doctrine.

### Attorney-Client Privilege

The attorney-client privilege is the "oldest of the privileges for confidential communications known to the common

law." *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). The purpose of the privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States, supra.* The privilege applies to communications made in confidence by a client to an attorney for the purpose of obtaining legal advice, and also to confidential communications made by the attorney to the client if such communications contain legal advice or reveal confidential information on which the client seeks advice. *Upjohn Co. v. United States, supra.*

The party asserting the attorney-client privilege bears the burden of proving that the privilege applies. *Weil v. Investment/Indicators, Research & Management, Inc.,* 647 F.2d 18, 25 (9th Cir. 1981). One of the elements that the asserting party must prove is that it has not waived the privilege. *Weil v. Investment/Indicators, Research & Management, Inc., supra.*

Respondent contends that petitioner has waived the attorney-client privilege by (1) taking the position in its petition that its intent in the antitrust settlement was to pay damages for past lost income and (2) submitting the affidavits of Arthur Andersen, petitioner's in-house counsel, in support of its summary judgment motion. We find that petitioner waived the attorney-client privilege by filing the affidavits of its in-house counsel in support of its motion for partial summary judgment. As a result, we need not decide whether petitioner waived the privilege by taking the position claimed in its petition.[2]

For purposes of the attorney-client privilege, in-house counsel are generally treated the same as outside attorneys. *Natta v. Hogan,* 392 F.2d 686, 692 (10th Cir. 1968). Thus, communications of a legal nature with in-house counsel are privileged. However, disclosure of otherwise privileged communications may result in a waiver of the attorney-client privilege. *Garfinkle v. Arcata National Corp.,* 64 F.R.D. 688, 689 (S.D.N.Y. 1974); *Leybold-Heraeus Tech. v. Midwest Instrument Co.,* 118 F.R.D. 609, 614 (E.D. Wis. 1987).

---

[2]Compare dicta in *Karme v. Commissioner,* 73 T.C. 1163, 1184 (1980).

In the supplemental affidavit, Mr. Andersen summarizes petitioner's internal position in the antitrust litigation. *Supra*, p. 523. By submitting this affidavit in support of its position petitioner placed in issue the factual matters surrounding the antitrust payment, thereby waiving the attorney-client privilege as to the antitrust communications. Respondent, therefore, is entitled to discover communications between petitioner and its in-house counsel that pertain to the antitrust issue. Document HP000001-02 does not pertain to either the antitrust or Giret issues, and therefore remains protected by the attorney-client privilege. Petitioner has waived the attorney-client privilege for the remaining documents submitted for our review.

### *Work Product Doctrine*

Petitioner also claims that many of the documents at issue constitute attorney work product and remain protected even after the litigation for which they had been prepared is terminated. Respondent, conversely, argues that the documents are not protected by the work product doctrine for the following reasons: (1) The work product doctrine is reduced or eliminated where the litigation in which the information is sought is remote from the original litigation; and (2) Hartz has waived any protection afforded by the work product doctrine by (a) taking the position that its intent in the antitrust settlement was to pay damages for past lost income and (b) submitting the affidavits of its in-house counsel.

The work product doctrine is distinct from and broader than the attorney-client privilege, which protects only communications between the attorney and client. *Hickman v. Taylor,* 329 U.S. 495, 508 (1947). In *Hickman,* the Supreme Court provided the rationale for protecting an attorney's work product from discovery:

In performing his various duties * * * it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. * * * This work is reflected, of course, in interviews, statements, memoranda, correspon-

dence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways--aptly though roughly termed * * * the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served. [Hickman v. Taylor, *supra* at 510-511.]

Protection derived from the work product doctrine is not absolute. *United States v. Nobles,* 422 U.S. 225, 239 (1975). Further, the work product doctrine, like the attorney-client privilege, may be waived. *United States v. Nobles, supra.* Protection afforded by the work product doctrine to "opinion work product" may also be waived. See *In re Sealed Case,* 676 F.2d 793, 811 (D.C. Cir. 1982); *Coleco Industries, Inc. v. Universal City Studios,* 110 F.R.D. 688, 690-691 (S.D.N.Y. 1986).

The work product doctrine is intended to be "intensely practical" and "grounded in the realities of litigation in our adversary system." *United States v. Nobles, supra* at 238. In determining whether the work product doctrine has been waived, the particular circumstances of the case are taken into account. *United States v. Nobles, supra* at 239 n. 14. After considering the following factors, we conclude that petitioner has waived the work product doctrine.

First, there is no substantial equivalent for petitioner's work product. The settlement agreement executed between petitioner and Robins failed to specify the nature of the payment. As a result, evidence of petitioner's intent is highly probative in determining the true character of the settlement payment. See *Federal Paper Board Co. v. Commissioner,* 90 T.C. 1011, 1024 (1988). It is implausible that respondent can ascertain petitioner's settlement intentions with any degree of accuracy solely by analyzing much, but possibly not all, of the information considered by petitioner and its counsel during the settlement negotiations. Thus, the work product generated by petitioner's counsel during the settlement negotiations provides the only adequate evidence of petitioner's settlement intentions.

Furthermore, we emphasize that the work product at issue was prepared approximately a decade ago in distinctly

different litigation. Thus dangers associated with the discovery of an attorney's work product as envisioned by *Hickman* and its progeny are slight, and there is little or no need to continue protecting the work product from discovery. Continued application of the work product doctrine in these circumstances would not serve to maintain a "healthy adversary system." *In re Sealed Case, supra* at 818.

Finally, petitioner has waived the work product doctrine by making a "testimonial use" of work product materials. See *In re Sealed Case, supra* at 817-818; *Coleco Industries, Inc. v. Universal City Studios, supra* at 691. Petitioner submitted affidavits from its in-house counsel to support its internal position with respect to the antitrust litigation. By offering this selective disclosure of work product to establish its intent, petitioner has waived all work product protection relevant to the same issue, and fairness requires discovery of all work product that pertains to petitioner's antitrust settlement intentions. *Coleco Industries, Inc. v. Universal City Studios, supra.*

Petitioner also argues that our Rules of Practice and Procedure do not permit discovery of any attorney work product. See *Zaentz v. Commissioner,* 73 T.C. 469, 478 (1979); *P.T. & L. Constr. Co. v. Commissioner,* 63 T.C. 404, 408 (1974). In the notes to our rules, the Rules Committee observed (Note to Rule 70, 60 T.C. 1097, 1098 (1973):

the "work product" of counsel and materials prepared in anticipation of litigation or for trial, are *generally* intended to be outside the scope of allowable discovery under these Rules, and therefore the specific provisions for disclosure of such materials in FRCP 26(b)(3) have not been adopted. [Emphasis added.]

In 1970, Federal Rule of Civil Procedure (FRCP) 26(b)(3) incorporated the work product doctrine into the general rule governing the discovery of materials:

(3) Trial Preparation: Materials. Subject to the provisions of subdivision (b) (4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b) (1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without

undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. * * *

FRCP 26(b)(3) thus permits discovery of attorney work product, without regard to whether the protection has been waived, only when the party seeking discovery establishes a substantial need for the materials and is unable to obtain equivalent materials without undue hardship. On the other hand, the question whether there was a waiver of protection is not discussed in FRCP 26(b)(3). The use of the word "generally" in the note to Rule 70 strongly suggests that the scriveners recognized that the refusal to incorporate FRCP 26(b)(3) was limited to the purview of that rule and did not constitute a bar to production of all attorney work product.

*An appropriate order will be issued.*