STRYKER CORPORATION and Osteonics Corporation, Plaintiffs,

v.

INTERMEDICS ORTHOPEDICS, INC. and Marli Medical Supplies, Inc., Defendants.

No. CV 90–3006 (ADS).

United States District Court, E.D. New York.

March 1, 1993.

See also 145 F.R.D. 298.

John A. Diaz (on the brief), Robert E. Paulson, Christopher A. Hughes (Michael A. Nicodema, of counsel), Michael J. Timmons, Morgan & Finnegan, New York City, for plaintiffs.

Ralph Dawson (on the brief), Fulbright & Jaworski, New York City (Larry C. Jones, of counsel), Frank B. Wyatt, II, Bell, Seltzer, Park & Gibson, Charlotte, NC, James W. Repass, Fulbright & Jaworski, Houston, TX, for defendants.

ORENSTEIN, United States Magistrate Judge.

In this patent infringement action, defendants have filed an amended answer and

counterclaim pleading in greater specificity their allegation that plaintiffs violated their duty of candor to the Patent and Trademark Office ("PTO"). Defendants allege that plaintiffs' inequitable conduct render the patent in-suit unenforceable. To support this defense, defendants seek to depose certain individuals involved in the prosecution of the patent in-suit. Specifically, defendants seek to continue the deposition of plaintiffs' (a) outside patent counsel and (b) in-house liaison with outside patent-counsel. During the course of the initial depositions, plaintiffs objected to certain questions on the basis of the attorney-client privilege. These questions focused on the affirmative defense of inequitable conduct. Herein, defendants move to compel answers to these deposition questions. For the reasons set forth below, the motion is denied.

## DISCUSSION

### LAW

#### *Inequitable Conduct*

The question before this court is not whether the patent in-suit is enforceable, but whether the protective shield of the attorney-client privilege should be abrogated. *Research Corp. v. Gourmet's Delight Mushroom Co.*, 560 F.Supp. 811, 819 (E.D.Pa. 1983). However before this court can rule on whether the privilege should be abrogated, it is important to review the underpinning of the affirmative defense of inequitable conduct.

■ To prevail in its claim of inequitable conduct[1], defendants must prove by clear and convincing evidence *both* that the prior art withheld from the PTO was material and that plaintiffs and/or their patent counsel manifested a deceptive intent to withhold such matter. *LaBounty Mfg., Inc. v. U.S. Intern. Trade Com'n.*, 958 F.2d 1066, 1070 (Fed.Cir.1992). "[I]f an applicant withholds material information from the PTO with the *intent* to affect the allowance of claims, the applicant may be found guilty of inequitable conduct." *Id.* at 1070 [emphasis added]. "An equitable judgment must be made that, in light of all the particular circumstances, the conduct of the patentee is so culpable that its patent should not be enforced." *Id.* at 1070; *Consolidated Aluminum Corp. v. Foseco Intern. Ltd.*, 910 F.2d 804 (Fed.Cir. 1990).

'Inequitable conduct' is not, or should not be, a magic incantation to be asserted against every patentee. Nor is that allegation established upon a mere showing that art or information having some degree of materiality was not disclosed. To be guilty of inequitable conduct, one must have *intended to act inequitably*. Thus, one who alleges a 'failure to disclose' form of inequitable conduct must offer clear and convincing proof of: (1) prior art or information that is material; (2) knowledge chargeable to applicant of that prior art or information and of its materiality; and (3) failure of the applicant to disclose the [prior] art or information resulting from an intent to mislead the PTO. That proof may be rebut-

---

1. "The concept of 'fraud on the Patent Office,' as something distinct from common law fraud or deceit, derives primarily from judicial opinions in infringement actions, holding patents 'unenforceable' on equitable grounds." *Digital Equipment Corp. v. Diamond*, 653 F.2d 701, 708 (1st Cir.1981). Misconduct before the PTO "goes considerably beyond the classical definition of 'fraud' ... and includes 'a wider range of "inequitable" conduct found to justify holding a patent unenforceable.'" *Carter–Wallace, Inc. v. Davis–Edwards Pharmacal Corp.*, 443 F.2d 867, 881 (2nd Cir.1971) (*quoting Norton v. Curtiss*, 433 F.2d 779, 793 [C.C.P.A.1970]).

The less stringent standard necessary to show 'fraud' as a defense to an infringement action has been characterized primarily by a relaxation of the traditional requirement of 'scienter.' It is not necessary to a demonstration of

'fraud on the Patent Office,' as it would have been to a demonstration of common law fraud, to show that a misrepresentation or omission was intentionally made with a particular deceptive purpose in mind. [citations omitted]. Culpability, however, remains an element of 'fraud,' even in the patent law context. [citations omitted]. While this court 'has not defined the exact standard of wrongful conduct that would disable an otherwise valid patent from enforcement,' we have noted that 'courts considering allegations of fraud in procurement of a patent have held that some element of wrongful conduct—intentional misrepresentation or inequitable, reckless, or grossly negligent conduct—is a necessary predicate to rendering a patent unenforceable in the courts.' *Digital*, 653 F.2d at 709 [citations omitted].

ted by a showing that: (a) the prior art or information was not material (e.g., because it is less pertinent than or merely cumulative with prior art or information cited to or by the PTO); (b) if the prior art or information was material, a showing that applicant did not know of that art or information; (c) if applicant did know of that art or information, a showing that applicant did not know of its materiality; (d) a showing that applicant's failure to disclose art or information did not result from an intent to mislead the PTO.

Thus, a balancing of overlapping considerations is involved in determining, in view of all the circumstances, the presence or absence of inequitable conduct. The level of materiality may be high or low. Applicant must be chargeable with knowledge of the existence of the prior art or information, for it is impossible to disclose the unknown [citations omitted]. Similarly, an applicant must be chargeable with knowledge of the materiality of the art or information ... [or] it may be found that the applicant 'should have known' of that materiality.

*FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed.Cir.1987) [emphasis added and footnotes omitted].

### Materiality

Former Patent Office rule 56 [2] defines information as being material "where there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." 37 C.F.R. § 1.56(a) (1992); *Merck & Co. v. Danbury Pharmacal, Inc.*, 873 F.2d 1418, 1421 (Fed.Cir.1989). "The PTO standard [for materiality] is an appropriate starting point for any discussion of materiality, for it appears to be the broadest ... and because that materiality boundary most closely aligns with how one *ought* to conduct business with the PTO." *American Hoist & Derrick Co. v. Sowa & Sons Inc.*, 725 F.2d 1350, 1363 (Fed.Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984) [emphasis and bracketed material add-

ed]; *see Akzo N.V. v. U.S. Intern. Trade Com'n.*, 808 F.2d 1471, 1481 (Fed.Cir.1986), *cert. denied*, 482 U.S. 909, 107 S.Ct. 2490, 96 L.Ed.2d 382 (1987) (adopting the PTO's standard of materiality as the "major standard"). "To be material, a misrepresentation need not be relied on by the examiner in deciding to allow the patent." *Merck*, 873 F.2d at 1421.

### Intent to Deceive

"An applicant's conduct in its entirety must 'manifest[ ] a sufficiently culpable state of mind to warrant a determination that it was inequitable.'" *Halliburton Co. v. Schlumberger Technology Corp.*, 925 F.2d 1435, 1443 (Fed.Cir.1991) (*quoting Consolidated Aluminum*, 910 F.2d at 809). "Direct proof of wrongful intent is rarely available but may be inferred from clear and convincing evidence of the surrounding circumstances." *LaBounty*, 958 F.2d at 1076; *see Klein v. Peterson*, 866 F.2d 412, 415 (Fed.Cir.) ("circumstantial evidence may permit an inference of intent"), *cert. denied*, 490 U.S. 1091, 109 S.Ct. 2432, 104 L.Ed.2d 989 (1989). However, materiality of an undisclosed reference does not presume an intent to deceive. *Allen Organ Co. v. Kimball Int'l, Inc.*, 839 F.2d 1556, 1567 (Fed.Cir.), *cert. denied*, 488 U.S. 850, 109 S.Ct. 132, 102 L.Ed.2d 104 (1988). Intent "is most often proven by 'a showing of acts the natural consequences of which are presumably intended by the actor.'" *Merck*, 873 F.2d at 1422 (*quoting Kansas Jack, Inc. v. Kuhn*, 719 F.2d 1144, 1151 [Fed.Cir.1983] ). However, "knowledge alone [of the prior art] is not culpable intent." *Allen Organ*, 839 F.2d at 1568 [bracketed material added]. "Intent is a factual determination particularly within the province of the trier of fact." *Id.* at 1567. However, a finding of gross negligence alone does not justify an inference of intent to deceive. *Kingsdown Medical Consultants Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed.Cir.1988) (*en banc* in part), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989); *see Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 882 F.2d 1556, 1562 (Fed.Cir.1989), *cert.*

---

**2.** The current PTO Rule 56 which became effective on March 16, 1992 is not applicable to the instant case.

denied, 493 U.S. 1076, 110 S.Ct. 1125, 107 L.Ed.2d 1031 (1990) (court ruling that a finding of gross negligence, alone, was insufficient to meet the intent requirement of inequitable conduct; however when combined with other factors, gross negligence may be sufficient).

■ To determine whether, a finding of inequitable conduct is mandated, the materiality of the information that was not provided to the Patent Office is weighed against the intent of the alleged actor. *American Hoist,* 725 F.2d at 1363–64; *see Hewlett–Packard Co. v. Bausch & Lomb, Inc.,* 746 F.Supp. 1413, 14 U.S.P.Q.2d 1906, 1907 (N.D.Cal. 1990) [after remand] (intent to deceive found where plaintiff's conduct amounted to a "studied ignorance" of the facts and exhibited a "reckless indifference to the truth" and a "complete absence of evidence of good faith"), *aff'd,* 925 F.2d 1480 (Fed.Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 2854, 115 L.Ed.2d 1021 (1991).

### Attorney–Client Privilege

Defendants frequently in patent infringement litigation assert a defense of inequitable conduct. However, because evidence of the conduct alleged to be inequitable is often found only in communications between the inventor and/or manufacturer and a *patent attorney,* the attorney-client privilege must be breached before access is permitted to a patentee for any documents reflecting such communications. However, more than a mere showing of circumstantial evidence indicating inequitable conduct before the PTO must be alleged to in order to vitiate the attorney-client privilege. As noted by Chief Judge Luongo of the Eastern District of Pennsylvania

> [t]he protection of the public interest is unquestionably at the core of the patent attorney's duty of candor toward the PTO. The attorney-client privilege is not, however, inherently detrimental to federal patent policy and the protection of the public interest. *In re Natta,* 410 F.2d 187, 190–91, 161 U.S.P.Q. 389, 391 (3d Cir.1969); *Natta v. Hogan,* 392 F.2d 686, 691–92, 157 U.S.P.Q. 183, 187 (10th Cir.1968); *Collins & Aikman Corp. v. J.P. Stevens & Co.,* 51

F.R.D. 219, 220–21, 169 U.S.P.Q. 296, 297 (D.S.C.1971). The duty of candor largely equates with a duty of disclosure. The purpose of the attorney-client privilege, on the other hand, is to facilitate the administration of justice by encouraging the free and open exchange of information between attorney and client. 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 503[02] (1982); 8 J. Wigmore, *Evidence* § 2291 (McNaughton rev. 1961). The duty of candor and the privilege thus serve differing interests, *Natta v. Hogan, supra,* 392 F.2d at 691; 157 U.S.P.Q. at 187; more often than not, however, the freedom of consultation fostered by the privilege aids the patent attorney in satisfying his duty of full disclosure to the PTO. Recent decisions, therefore, have uniformly recognized the applicability of the attorney-client privilege to patent proceedings. [citation omitted].

The premise supporting the attorney-client privilege is that freedom of consultation promotes the administration of justice by enabling the attorney to properly, competently and ethically represent the client. The fraud exception to the privilege emanates from the realization that the purpose of the privilege is obviously frustrated if the attorney-client relationship is used as a vehicle to further unlawful action. M. Larkin, *Federal Testimonial Privilege* § 2.07[1] (1982). In the words of Justice Cardozo, '[t]he privilege takes flight if the relation is abused.' *Clark v. United States,* 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933). In recent years, the courts have confronted with increasing frequency the claim that privileged communications between patent counsel and client are discoverable under the fraud exception to the attorney-client privilege. Perhaps, as a result, it is easy to overlook that this exception applies in other contexts as well. *See, e.g., Union Camp Corporation v. Lewis,* 385 F.2d 143 (4th Cir.1967) (per curiam); *Ohio–Sealy Mattress Mfg. Co. v. Kaplan,* 90 F.R.D. 21 (N.D.Ill.1980); *United States v. Mackey,* 405 F.Supp. 854 (E.D.N.Y.1975); *International Telephone & Telegraph Corp. v. United Telephone Co.,* 60 F.R.D. 177 (M.D.Fla.1973). But

there is a great danger in losing sight of the foundations of this narrow exception to the attorney-client privilege. That danger is particularly keen in this case. The exception is more commonly referred to as the 'crime or fraud' exception. 2 J. Weinstein & M. Berger, *Weinstein's Evidence, supra,* ¶ 503(d)(1)[01]. As its name connotes, it encompasses only serious unlawful activity. Hence, for the privilege to take flight, unlawful conduct, not mere inequity, must be demonstrated. *See American Optical Corp., supra,* 179 U.S.P.Q. at 684. This reasoning, although not stated in so many words, underlies the holding in *American Optical.* The court in *American Optical* recognized that inequitable conduct may be sufficient to render a patent unenforceable; but it expressly disavowed that standard as a test for piercing the attorney-client privilege.

*Gourmet's Delight Mushroom,* 560 F.Supp. at 820.

■ The attorney-client privilege "should be pierced when, and *only when,* a prima facie case of fraud has been shown." *American Optical Corp. v. United States,* 179 U.S.P.Q. 682, 684, 1973 WL 20128 (Ct.Cl. 1973) [emphasis in original]. Proof of inequitable conduct is not sufficient to vitiate the privilege, rather the movant must establish a *prima facie* [3] case of common law fraud [4] before the privilege can be extinguished. *American Standard,* 229 U.S.P.Q. at 901; *American Optical,* 179 U.S.P.Q. at 684. Likewise, mere allegations or suspicions of

fraud are not sufficient to vitiate the attorney-client privilege. *Gourmet's Delight Mushroom,* 560 F.Supp. at 819. "[W]hile a prima facie showing need not be such as to actually prove the disputed fact, it must be such as to subject the opposing party to the risk of non-persuasion if the evidence as to the disputed fact is left unrebutted." *Duplan Corp. v. Deering Milliken, Inc.,* 540 F.2d 1215, 1220 (4th Cir.1976) [footnote omitted]; *Leybold–Heraeus,* 118 F.R.D. at 615.

A *prima facie* showing of fraud requires: (1) a knowing, willful, and intentional act of misrepresentation or omission before the Patent Office; (2) that is material; and (3) that the Patent Office relied [5] upon [the misrepresentation or omission] [6] in deciding to issue the patent. *Bulk Lift Intern. Inc. v. Flexcon & Systems, Inc.,* 122 F.R.D. 493, 495 (W.D.La.1988) (*citing American Optical,* 179 U.S.P.Q. at 684) [bracketed material added]; *see American Hoist,* 725 F.2d at 1363–64. Unsupported assertions that these elements have been met are insufficient to pierce the privilege. *Rohm and Haas Co. v. Dawson Chemical Co.,* 214 U.S.P.Q. 56, 60, 1981 WL 59409 (S.D.Tex.1981). In discovery proceedings, to breach the privilege, each of these elements must be established by at least a *prima facie* showing.

## APPLICATION OF FACTS TO LAW

Plaintiffs' contend that the Whiteside patent is no more material than the prior art which plaintiffs had already disclosed to the patent examiner.[7] Based on the testimony as found in the Whiteside deposition [8] and

3. For "fraud" to be established at trial as distinguished from the application herein, the movant must establish it by clear and convincing evidence.

4. Movants have failed to note that vitiating the attorney-client privilege requires a *prima facie* showing of fraud. In fact, the proposition which movant attributes to page 615 of *Leybold–Heraeus Technologies, Inc. v. Midwest Instrument Co.,* 118 F.R.D. 609 (E.D.Wis.1987) in its brief on page six is clearly incorrect. *See American Standard, Inc. v. Pfizer Inc.,* 229 U.S.P.Q. 897, 901, 1986 WL 9713 (D.Del.1986) ("This error in terminology would not preclude the vitiation of plaintiff's privilege if prima facie evidence of fraud existed").

5. With respect to the element of reliance, courts have incorporated this element of fraud into a

court's determination of whether certain prior art is "material."

6. The bracketed material added to the *Bulk Lift* factors was taken from the factors as found in *American Optical,* 179 U.S.P.Q. at 684.

7. For the purposes of this order, it is assumed that plaintiffs admit that they did not disclose to the PTO a certain implant developed by Dr. Whiteside. Likewise, the court assumes that the attorney-client privilege applies to the questions at issue in the depositions which are the subject of this motion.

8. The court has read the portions of the Whiteside deposition annexed to each party's submissions. However, the court will not quote from the Whiteside deposition since each party has

accompanying exhibits to both parties submissions, this court finds that defendants have not met their burden to establish a *prima facie* case of fraud sufficient to vitiate the attorney-client privilege.

Primarily, defendants contend that evidence of intent to deceive the PTO is established by plaintiffs' (1) citation to the Whiteside device [9] in certain 501(k) papers submitted to the Food and Drug Administration ("FDA") for the purpose of obtaining FDA approval for a specific hip implant (a cement implantation) and (2) failure to cite such a reference in the patent application for the patent in-suit.

Defendants contend that the following time sequence is relevant to its argument that the plaintiffs were "inequitable" by not disclosing the Whiteside implant to the PTO. The 501(k) Notification was submitted to the FDA on January 17, 1987. *See* Exh. 12 to *Plaintiffs' Response to Defendants' Motion to Compel ("Plts' Response")*. Thereafter, plaintiffs' filed their patent application for the patent in-suit on January 19, 1988. The patent in-suit was granted on December 19, 1989. *See* Exh. 1 to *Plts' Response;*

▮ Plaintiffs contend that they did cite the Whiteside implant in the FDA notification (Exhibit 12) because the particular FDA submission referred to by defendants in their papers dealt with cemented implantations. Plaintiffs state that the patent in-suit is a cementless implantation and thus reference to the Whiteside implant in the patent application would be nonsensical. Supporting plaintiffs' position is the fact that the movant's have not submitted to the court any published writing indicating that the Whiteside implant was known to be used in cementless applications. *See Whiteside Deposition* at p. 201, dated March 21, 1992 (annexed as exh. 5 to *Plts' Response*). Consequently, movants' argument fails to support the inference that plaintiffs intentionally failed to disclose the Whiteside implant in the application for the patent in-suit. Lastly, plaintiffs state that consistent with their position is the fact that when they filed a second

FDA 501(k) notification pertaining to a *cementless* implant (the patent in-suit is cementless), it did not cite to the Whiteside implant. *See* Exh. 14 to *Plts' Response; see Merck & Co., Inc. v. Danbury Pharmacal, Inc.,* 694 F.Supp. 1, 21–35 (D.Del.1988) (statements made to the FDA and not revealed to the PTO found disturbing and persuasive evidence of an intent to mislead, supporting finding of inequitable conduct), *aff'd,* 873 F.2d 1418, 1420, 1422 (Fed.Cir.1989) (the "simultaneous submission" of a certain date to the FDA and its withholding from the PTO is evidence of intent to deceive); *see also Genentech, Inc. v. Wellcome Foundation Ltd.,* 14 U.S.P.Q.2d 1363, 1369–70, 1990 WL 69187 (D.Del.1990); *Syntex (U.S.A.) Inc. v. Paragon Optical Inc.,* 7 U.S.P.Q.2d 1001, 1020, 1987 WL 124333 (D.Ariz.1987). Based on these arguments, the court finds no evidence of "intent to deceive" the PTO.

Defendants' in their reply papers do not respond to these arguments. An analysis of Exhibits 12 and 14 to *Plts' Response* (the two FDA notifications) reveals that each FDA submission cited to completely different references. This supports plaintiffs' contention that the Whiteside implant was referenced only in exhibit 12 because the Whiteside implant pertained to only cemented implants.

Defendants' contend that the inventor of the patent in-suit and the plaintiff corporations knew of the Whiteside reference prior to the filing of the patent and that such knowledge must be attributed to the plaintiffs. In addition, defendants contend that because the co-inventor of plaintiffs' patent and plaintiffs' liaison to outside patent counsel discussed the Whiteside implant prior to and during the pendency of the patent application such communication is evidence of an intent to deceive the PTO. Defendants claim that this is particularly so given that the Whiteside device was not cited in the PTO's "information disclosure statement" drafted by plaintiffs. Such theses are only correct, if the prior art reference is found to be materi-

---

deemed their supporting affidavits and exhibits confidential.

9. The Whiteside implant was never patented. *Defendants' Reply Brief* at 2, dated Oct. 28, 1992.

al.[10]  Based on the above, defendants have at best shown a low level of intent to deceive the PTO.

Plaintiffs' contend that the Whiteside implant does not "claim" a "Osteonics' type" distal tip.  Without going into the merits of the patent in-suit, the Whiteside implant appears not in any material way to incorporate any new concept related to the patent in-suit's distal tip.  A close reading of plaintiffs' patent reveals that the creation of and the improvements to the distal tip were the *sine qua non* of plaintiffs' patent.  Consequently, defendants failure to show a sufficient connection between any of the attributes of the Whiteside implant and the specific *claims* asserted in plaintiffs' patent belies their position that plaintiffs were "inequitable" before the PTO.

Defendants state that the Whiteside device is "material" because it

> included a modular component which fit over the shaft of the prosthesis to center the prosthesis in the femoral canal to avoid detrimental distal loading and proximal stress relief. (Whiteside Depo., pp. 90–91).

*Defendants' Brief* at 7.  The above cited page in defendants' brief which refers to Dr. Whiteside's deposition does not contain testimony for which the above quoted sentence stands.  But, more important, even if it did, defendants have not sufficiently connected the alleged similarities noted in the above statement with the modular distal tip featured in the patent in-suit, generally, or in particular to a specific claim in plaintiffs' patent.

While defendants artfully questioned Dr. Whiteside about the similarities between his implant design and plaintiffs' patent, the mere fact that the Whiteside design attempted to overcome similar technical obstacles in the design of hip implants as did plaintiffs' patent does not necessarily make the Whiteside patent relevant.  Based on the documents before the court, it appears that designers in the hip implant field were struggling to design an implant which would reduce certain common implant problems known to the industry.  In that regard, both plaintiffs and Whiteside were trying to produce the best possible product.  The court consequently finds that any similarities between the patent in-suit and the Whiteside implant are due to this confluence of objectives.

The portion of the Whiteside deposition supplied by defendants does not reflect any specific improvements to a distal tip.  The mere fact that Dr. Whiteside suggested an improvement similar to the one incorporated in plaintiffs' patent in-suit to the manufacturer of the Whiteside implant is *insufficient* to raise the specter of an intention to deceive—a necessary requirement to vitiate the attorney-client privilege.  *Whiteside Deposition* at p. 156.  In fact, Dr. Whiteside testified that plaintiffs' use of the distal tip in their patent was unique.  *Whiteside Deposition* at p. 243.  Consequently, this court finds that the Whiteside device has at best a modest level of materiality which is insufficient to permit the abrogation of the attorney client-privilege.

## CONCLUSION

This court finds that defendants have not sustained their burden to present a *prima facie* case of fraud on the PTO on the part of the plaintiffs.  The defendants have not met their burden subjecting plaintiffs to the risk of nonpersuasion if the evidence as to the disputed fact is left unrebutted.  Consequently, the attorney-client privilege asserted during the deposition will not be vitiated.  The motion is accordingly denied.[11]

SO ORDERED.

---

10.  As noted *infra*, for the purposes of this motion, this court finds the Whiteside implant to be only modestly material.

11.  This order does not preclude defendants from presenting their defense of inequitable conduct before the trial judge.  *See Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 722 F.Supp. 592, 595 (N.D.Cal.1988) (the court, having found that the

defense of inequitable conduct was a close and potentially dispositive issue, deferred consideration of the motion to produce certain documents protected by the attorney-client privilege until movant sustained their burden in putting forth a *prima facie* case of inequitable conduct); *American Standard*, 229 U.S.P.Q. at 897.