**Alan B. KARME and Laila M. Karme, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 80–7234.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 13, 1981.

Decided April 5, 1982.

Rehearing Denied May 3, 1982.

N. Jerold Cohen, Washington, D. C., argued for appellee; Michael L. Paup, Jonathan S. Cohen, R. Bruce Johnson, M. Carr Ferguson, Washington, D. C., on brief.

Before ANDERSON and SCHROEDER, Circuit Judges, and RICHEY,* District Judge.

SCHROEDER, Circuit Judge:

This is an appeal from a decision of the tax court that a $60,000 payment by the Appellants, Alan B. and Laila M. Karme, was not deductible under I.R.C. § 163, 26 U.S.C. § 163, as interest paid on an indebtedness because there was no genuine indebtedness. The transactions out of which the claimed interest deduction arose involved the movement of funds through a number of domestic and foreign corporations whose operations had come under scrutiny by the IRS in a series of investigations known as the "Bahamas Project."[1] We affirm.

## I. *Discriminatory Investigation*

The initial issue raised by the Karmes is whether the tax court properly granted the government's motion to strike a post-trial amendment to the taxpayers' petition. The amendment alleged that the deficiency assessment against the Karmes arose out of an investigation of their attorney, and that the government had therefore unconstitutionally "singled out" the Karmes for audit solely because of their connection with the tax planning of that attorney. As the special trial judge below noted, the attorney, Mr. Margolis, had "masterminded the tax planning" in each of the several cases then pending in which a similar defense was asserted. The Karmes sought to show through the introduction of voluminous evidence related to all aspects of the Bahamas Project, including documents on hundreds of unrelated IRS tax audits, that the inves-

Harry Margolis, Los Gatos, Cal., for appellants.

* Honorable Mary Anne Richey, United States District Judge for the District of Arizona, sitting by designation.

1. The conduct of the IRS in pursuing its Caribbean investigations has been questioned by the courts. *See United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980).

tigation of their attorney deprived the Karmes of their constitutionally protected rights to due process and equal protection of the laws.

■ The taxpayers' claim in this case is closely analogous to a claim of selective or discriminatory prosecution. Even examining the IRS's actions under the standard applied in criminal cases—a standard which is arguably too stringent for review of the initiation of a civil audit to which no criminal penalties attach—we cannot hold there was any impropriety in striking the claim. A recent controlling case with respect to a criminal tax prosecution is *United States v. Wilson*, 639 F.2d 500 (9th Cir. 1981). In denying taxpayers' claim of alleged discriminatory criminal prosecution this Court stated the test to be whether defendant has shown:

> (1) That others are generally not prosecuted for the same conduct;
>
> (2) The decision to prosecute this defendant was based upon impermissible grounds such as race, religion or the exercise of constitutional rights.

*Id.* at 503. *Accord, United States v. Ness*, 652 F.2d 890 (9th Cir.) (per curiam), *cert. denied*, —— U.S. ——, 102 S.Ct. 976, 70 L.Ed.2d 113; *United States v. Gillings*, 568 F.2d 1307 (9th Cir.), *cert. denied*, 436 U.S. 919, 98 S.Ct. 2267, 56 L.Ed.2d 760 (1978).

Appellants' allegations meet neither part of the test. The Karmes allege no more than that they and others similarly represented were investigated because of their participation in a tax scheme which their attorney engineered. No impermissible selectivity is involved.

We therefore do not need to reach the government's suggestion that a more lenient test with respect to government conduct should apply where the charge is a discriminatory civil investigation as opposed to a discriminatory criminal prosecution. *See Crowther v. Commissioner*, 269 F.2d 292, 293 (9th Cir. 1959), in which the claim was made that the Commissioner had failed to make a proper investigation and this court stated that "[t]he propriety of the motives of the Commissioner in giving the notice of deficiency is immaterial." The tax court itself appears to follow the same test which we apply to criminal prosecutions. *See Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 328 (1974), in which the tax court stated that it will look behind the deficiency notice to determine the Commissioner's motives in the "extremely rare" case where there is "substantial evidence of unconstitutional conduct on [the Commissioner's] part . . . ."

## II. *Evidentiary Issues*

The Karmes next claim that the tax court committed reversible error by admitting into evidence certain bank records and testimony. These objections must also fail.

■ The Karmes argue that the testimony of three former employees or associates of Margolis was hearsay and irrelevant. Although the testimony did not relate to the particular transaction giving rise to the deficiency, it did tend to establish a pattern or practice of tax planning of which this transaction was a part, and it was within the tax court's discretion to admit. Fed.R. Evid. 406.

The tax court also admitted records of Banco Popular Antilliano N.V., a Netherlands Antilles bank, that the government used to trace the flow of funds creating the disputed deduction. The bank provided the records pursuant to Article XXI of the Tax Convention with the Kingdom of the Netherlands, April 29, 1948, 62 Stat. 1757. The records were placed into evidence through the testimony of IRS special agent James Lynch, who microfilmed the documents with the assistance of two Netherlands Antilles government officials.

■ Taxpayers correctly claim that the documents were not brought within the Fed.R.Evid. 803(6) "business records" exception to the hearsay rule because Lynch was not a "custodian or other qualified witness" capable of testifying that the records were kept in the course of a regularly conducted business activity.

■ However, Fed.R.Evid. 803(24) provides another exception to the hearsay rule

when the statement is material, probative, and when "the interests of justice will best be served by admission of the statement into evidence." The records were both material and probative. Given the circumstantial guarantees of trustworthiness which were present here, the distant location of the bank, and the lack of any evidence in the record to suggest that the bank records are anything other than what they purport to be, we conclude that there was no abuse of discretion in admitting them under 803(24). *United States v. Friedman*, 593 F.2d 109, 118–19 (9th Cir. 1979).

### III. *Interest Deduction*

The Karmes' principal argument on the merits is that the tax court improperly placed the burden on them to show the legitimacy of the interest deduction. They base their argument on the recent case of *Weimerskirch v. Commissioner*, 596 F.2d 358 (9th Cir. 1979), where this Court held that the Commissioner was not entitled to rely solely upon a presumption of the correctness of his deficiency determination with respect to unreported income. The taxpayers here argue that without the presumption of correctness the Commissioner would not have prevailed.

The Government correctly points out, however, that the Commissioner in *Weimerskirch* offered no evidence to substantiate the deficiency determination; the burden would have been placed on the taxpayer to show that he had *not* received unreported income from drug sales. In that situation the Court held that the Commissioner could not benefit from a presumption of correctness. The Court required more than a "naked" assessment without any evidentiary foundation. *Id.* at 362. *See United States v. Janis*, 428 U.S. 433, 441–42, 96 S.Ct. 3021, 3026, 49 L.Ed.2d 1046 (1976).

*Weimerskirch*, however, is a limited exception to the general rule that the Commissioner's determinations are presumptively valid. When the Commissioner attempts to include unreported income, the Commissioner should have the burden of proving his case "because the taxpayer may face practical difficulties in attempting to refute the Commissioner's assertion that the taxpayer received unreported income." *Rockwell v. Commissioner*, 512 F.2d 882, 886 (9th Cir.), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975). That problem does not exist when, as in this case, the Commissioner questions a deduction. In this situation the taxpayer retains the burden of proof. *Id.; Herbert v. Commissioner*, 377 F.2d 65, 71 (9th Cir. 1967). Further, the record shows that the Commissioner's deficiency assessment was by no means "naked." Unlike *Weimerskirch*, the Commissioner here offered substantial evidence calling into question taxpayers' deductions. The Karmes have not demonstrated that the tax court's conclusion that the transactions lacked economic substance was clearly erroneous. *Thompson v. Commissioner*, 631 F.2d 642, 646 (9th Cir. 1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981).

Affirmed.