BRADFORD C. AND MARYBETH B. BERNARDO, PETITIONERS
*v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 24694–93.          Filed June 20, 1995.

*E. Hans Lundsten* and *Christopher C. Whitney,* for petitioners.

*Powell W. Holly* and *Meryl Silver,* for respondent.

OPINION

WELLS, *Judge:* The instant case is before us on respondent's motion to compel production of documents and petitioners' motion to compel answers to interrogatories and to compel production of documents. Respondent determined deficiencies in petitioners' Federal income taxes for their taxable years 1987, 1988, and 1989, as well as additions to tax and penalties for such years.

*Background*

The facts leading up to the parties' motions to compel are summarized as follows. On their 1986 Federal income tax return, petitioners claimed a $593,000 charitable contribution deduction for the donation of a 21-foot granite sculpture entitled Omphalos[1] to the Massachusetts Bay Transportation Authority (the authority). The Omphalos sculpture was created by Dimitri Hadzi. It is currently situated in Harvard Square, Cambridge, Massachusetts. Petitioners' contribution base under section 170[2] was zero for their taxable year 1986. Petitioners claimed carryover charitable contribution deduc-

---

[1] Omphalos is the Greek word for navel.

[2] Unless otherwise stated, all section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

tions in the amounts of $40,406, $262,355, and $188,057 for their taxable years 1987, 1988, and 1989, respectively.

In the notice of deficiency, respondent denied the charitable contribution deductions petitioners claimed on their 1987, 1988, and 1989 Federal income tax returns on the grounds that petitioners failed to establish that they are entitled to a deduction under any section of the Internal Revenue Code. The notice of deficiency alternatively states that, if petitioners are able to establish that they are entitled to claim a deduction for the donation of Omphalos to the authority, the amount of the deduction petitioners are entitled to claim is limited to $100,000, rather than the $593,000 petitioners claimed on their 1986 Federal income tax return.

Petitioners resided in Wakefield, Rhode Island, when the petition in the instant case was filed.

*Respondent's Motion To Compel*

Respondent filed a motion to compel the production of documents, and petitioners timely filed an objection to respondent's motion. Respondent filed a response to petitioners' objection. A hearing on respondent's motion to compel the production of documents was set, and petitioners were directed to file a response to respondent's response to petitioners' objection. Petitioners then filed a supplement to their objection, which stated that petitioners opposed the production of certain documents on the grounds that such documents are privileged, and that such documents, therefore, are not subject to discovery. As part of their supplement, petitioners submitted a privilege log that listed the 39 documents they are withholding from production to respondent. Subsequently, petitioners filed a second supplement listing an additional seven documents that they are withholding based upon privilege.

At the hearing, petitioners offered the affidavit of Mr. Benjamin G. Paster, a partner in the law firm of Adler, Pollock & Sheehan.[3] Mr. Paster was engaged by petitioners during

---

[3] During the hearing, respondent objected to the introduction of Mr. Paster's affidavit into evidence on the grounds of hearsay. Petitioners' counsel informed the Court that Mr. Paster was unable to testify at the hearing because he was recovering from chemotherapy treatment and was advised by his doctor not to travel. Fed. R. Evid. 804(b)(5) provides an exception to the hearsay rule for witnesses who are unavailable if the statement is offered as evidence of a material fact, it is more probative on the point for which it offered than any other evidence which

the early 1980's to render legal advice concerning a possible donation of Omphalos to the authority. Mr. Paster provided petitioners with legal advice concerning the structure of the donation of the sculpture to the authority, and whether petitioners should claim a charitable contribution deduction on their Federal income tax return based upon that donation.

In his affidavit, Mr. Paster states that he would not have been able to render the legal advice concerning petitioners' donation without the assistance of Mr. Kenneth J. Linsner, a professional art appraiser, and Mr. Daniel J. Ryan, a certified public accountant. As to Mr. Linsner's services, Mr. Paster states:

Mr. Linsner, [was] the professional art appraiser who in early 1987 produced the appraisal of Omphalos of $596,000 [sic] that the * * * [petitioners] submitted to the Internal Revenue Service ("IRS") in support of the charitable deduction which * * * [petitioner Marybeth Bernardo] claimed in connection with the gifting of Omphalos, [and] it was I who first interviewed Mr. Linsner, and who engaged him on behalf of Marybeth Bernardo.

The only communications which I have ever had with Mr. Linsner were with respect to the valuation of Omphalos. All of my communications with him were for the sole purpose of obtaining his best professional opinion as to the fair market value of Omphalos as to which, for lack of training and expertise, I had no opinion, either professional or personal. In turn, the sole purpose of seeking his opinion as to fair market value was to assist me in providing legal advice to the * * * [petitioners] regarding the proposed gifting of the sculpture to the MBTA * * *.

During the hearing, petitioners' counsel stated that Mr. Paster did not pay Mr. Linsner's fee but that he engaged him "in the sense that he located Mr. Linsner as the professional art adviser, talked to him about the terms of his engagement and saw to the engagement of Mr. Linsner". In his affidavit, Mr. Paster states that he expected that his communications with Mr. Linsner would be kept confidential, and that, to the best of his knowledge, Mr. Linsner has kept such commu-

the proponent can procure, and the interests of justice will be best served by admitting the statement into evidence. We find that Mr. Paster's affidavit is material to the issue of whether his communications with Messrs. Ryan and Linsner fall within the scope of the attorney-client privilege, that the affidavit is more probative than any other evidence petitioners could offer, and that the interests of justice would be best served by admitting the affidavit into evidence. Accordingly, we will admit Mr. Paster's affidavit into evidence. We note that affidavits are a staple of motions practice, particularly where the parties assert that documents are protected from discovery by the attorney-client privilege or the work product doctrine. Indeed, respondent offered the affidavit of Ms. Karen E. Carolan as support for respondent's objection to petitioners' discovery requests.

nications confidential. Mr. Paster acknowledged sharing the substance of those communications with petitioners and Mr. Ryan.

During the hearing, Mr. Ryan testified to the following facts. Petitioners engaged him to assist them with the preparation of their Federal income tax returns beginning in 1982. Mr. Ryan oversaw the preparation of petitioners' Federal income tax returns for the taxable years 1987, 1988, and 1989, the taxable years in issue in the instant case.[4] Mr. Ryan also represented petitioners during the Internal Revenue Service's (IRS's) audit of petitioners' Federal income tax returns for the taxable years in issue, and filed a protest with the IRS's Appeals Office. The notice of deficiency indicates that a copy of the notice was sent to Mr. Ryan in his capacity as petitioners' authorized representative.

Mr. Ryan was aware that petitioners had engaged Mr. Paster to structure the donation of Omphalos to the authority. Mr. Ryan provided Mr. Paster with information regarding petitioners' Federal income tax returns. During April of 1991, the IRS notified Mr. Ryan that its Art Advisory Panel had determined that the fair market value of Omphalos was substantially less than the amount of the charitable contribution deduction petitioners claimed on their 1986 Federal income tax return. Upon receiving the notice of the Art Advisory Panel's findings, Mr. Ryan informed petitioners that he believed that they would have to legally challenge the IRS's position as to the fair market value of the sculpture.

Mr. Ryan also provided information about petitioners' Federal income tax returns to Mr. Lawrence McCarthy III and Mr. Gerald DeMaria. Messrs. McCarthy and DeMaria are partners in the law firm of Higgins, Cavanagh & Cooney, and they represented petitioner Bradford C. Bernardo in his divorce from petitioner Marybeth Bernardo.

Mr. Ryan testified that he kept all of his communications with petitioners and their attorneys confidential. Mr. Ryan was hired and paid by petitioners. Mr. Ryan never received a letter of engagement from petitioners' attorneys.

---

[4] Mr. Ryan also prepared Federal income tax returns for petitioners' wholly owned business, the Providence Granite Co.

*Discussion*

Rule 70(b) provides that "The information or response sought through discovery may concern any matter not privileged and which is relevant to the subject matter involved in the pending case." The party opposing the production of information has the burden of establishing that the documents sought by the other party are not relevant or that they are otherwise not discoverable. *Rutter v. Commissioner,* 81 T.C. 937, 948 (1983); *Branerton Corp. v. Commissioner,* 64 T.C. 191, 193 (1975); *Hospital Corp. of America v. Commissioner,* T.C. Memo. 1994–100. Accordingly, petitioners bear the burden of showing that the documents sought by respondent are privileged.

### 1. *Attorney-Client Privilege*

The attorney-client privilege "applies to communications made in confidence by a client to an attorney for the purpose of obtaining legal advice, and also to confidential communications made by the attorney to the client if such communications contain legal advice or reveal confidential information on which the client seeks advice." *Hartz Mountain Indus. v. Commissioner,* 93 T.C. 521, 525 (1989) (citing *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981)).

Disclosure of a privileged communication may result in a waiver of the attorney-client privilege. *Id.* The party asserting the attorney-client privilege must prove that it has not waived the privilege. *Id.* Blanket claims of privilege without any allegations that the production of the documents requested would reveal, directly or indirectly, confidential communications between the taxpayer and the attorney, or without any allegations that the particular documents were related to the securing of legal advice, are insufficient to sustain a claim of attorney-client privilege. *Zaentz v. Commissioner,* 73 T.C. 469, 475 (1979).

Section 7453 provides that the Tax Court is bound by the rules of evidence applicable in a trial without a jury in the U.S. District Court for the District of Columbia. Rule 143(a); *Fu Inv. Co. v. Commissioner,* 104 T.C. 408 (1995); *Von Tersch v. Commissioner,* 47 T.C. 415, 418–419 (1967). The Court of Appeals for the District of Columbia "adheres to the axiom that the attorney-client privilege must be 'strictly confined

within the narrowest possible limits consistent with the logic of its principle.'" *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.,* 5 F.3d 1508, 1514 (D.C. Cir. 1993) (quoting *In re Sealed Case,* 676 F.2d 793, 807 n.44 (D.C. Cir. 1982)). In *Linde Thomson,* the Court of Appeals for the District of Columbia held that there was no insurer-insured privilege similar to the attorney-client privilege. In reaching its decision, the Court of Appeals analyzed the "logic" of the attorney-client privilege "principle" as follows:

The attorney-client privilege undeniably extends to communications with "one employed to assist the lawyer in the rendition of professional legal services." Supreme Court Standards 503(a)(3), 503(b), *cited in United States v. (Under Seal),* 748 F.2d 871, 874, n.5 (4th Cir. 1984). In *FTC v. TRW, Inc.,* 628 F.2d 207, 212 (D.C. Cir. 1980), we explored the ambit of this logic. Tracing the line of cases beginning with Judge Friendly's opinion in *United States v. Kovel,* 296 F.2d 918 (2d Cir. 1961), we observed that the privilege logically encompassed "reports of third parties made at the request of an attorney or client where the purpose of the report was to put in usable form information obtained from the client."[5] *TRW,* 628 F.2d at 212. We stressed that the critical factor for purposes of the attorney-client

---

[5] In *United States v. Kovel,* 296 F.2d 918 (2d Cir. 1961), an accountant employed by a tax law firm to sit in on a client's conversations with attorneys was held properly to have exercised an attorney-client privilege when he refused to answer questions in a grand jury concerning one such conversation. The Court of Appeals for the Second Circuit drew the following distinction with respect to a client's communication with an accountant prior to consulting with an attorney:

this draws what may seem to some a rather arbitrary line between a case where the client communicates first to his own accountant (no privilege as to such communications, even though he later consults his lawyer on the same matter, *Gariepy v. United States,* 189 F.2d 459, 463 (6th Cir. 1951)), and others, where the client in the first instance consults a lawyer who retains an accountant as a listening post, or consults the lawyer with his own accountant present. But this is the inevitable consequence of having to reconcile the absence of a privilege for accountants and the effective operation of the privilege of client and lawyer under conditions where the lawyer needs outside help. * * * [*Id.* at 922; fn. ref. omitted.]

The Court of Appeals for the Second Circuit also stated that

We do not deal in this opinion with the question under what circumstances, if any, such communications could be deemed privileged on the basis that they were being made to the accountant as the client's agent for the purpose of subsequent communication by the accountant to the lawyer; communications by the client's agent to the attorney are privileged. [*Id.* n.4; citations omitted.]

The issue of who engaged the accountant or other expert (i.e., the client or the attorney) and when the accountant or expert was retained (i.e., before or after the attorney) are factors that other courts have also considered when deciding whether the accountant's or expert's input into the attorney's legal advice is entitled to protection under the attorney-client privilege. See, e.g., *United States v. Judson,* 322 F.2d 460, 461–462 (9th Cir. 1963) (holding that the attorney-client privilege applied to a net worth statement prepared by accountants who were retained by the client to assist the attorney in providing legal advice); *Samuels v. Mitchell,* 155 F.R.D. 195, 198–199 (N.D. Cal. 1994) (holding that it was irrelevant whether the attorney or the client engaged the expert as long as the purpose of the engagement was to provide the attorney with legal advice).

privilege was that the communication be made *"in confidence* for the purpose of obtaining *legal advice from the lawyer." Id.* \* \* \* We cited cases consistent with this limitation extending the attorney-client privilege to a psychiatrist hired by a defense lawyer to aid in an insanity defense, *United States v. Alvarez,* 519 F.2d 1036, 1045–1046 (3d Cir. 1975), to an accountant hired by an attorney to assist the attorney in giving the client tax advice, *United States v. Cote,* 456 F.2d 142, 144 (8th Cir. 1972), and to an accountant who prepared a statement of a client's net worth at the attorney's request, *United States v. Judson,* 322 F.2d 460, 462–63 (9th Cir. 1963). We cautioned restraint, however, lest the privilege be construed to engulf "all manner of services" that should not be summarily excluded from the adversary process. *TRW,* 628 F.2d at 212. [*Id.* at 1514–1515.]

As stated above, the attorney-client privilege protects communications or reports by third parties, made at the request of the client, to the client's attorney.

Petitioners contend that log Nos. 1–10, 12–38, and 40–46 are protected from discovery by the attorney-client privilege. During the hearing on respondent's motion to compel, respondent conceded that, absent a waiver of the privilege by petitioners, the documents listed in petitioners' privilege log as Nos. 1–9, 14, 38, and 46 are protected from discovery by the attorney-client privilege. Respondent conceded on brief that privilege log No. 39, absent a waiver, is also protected from discovery by the attorney-privilege.[6] (All documents listed in petitioners' privilege log as supplemented will hereinafter be referred to as log No. followed by its corresponding number in petitioners' privilege log as supplemented.)

Many of the documents petitioners contend are protected by the attorney-client privilege were prepared by or sent to Mr. Ryan, a certified public accountant.[7] The attorney-client privilege is waived by any voluntary disclosure to a third party. *In re Horowitz,* 482 F.2d 72, 81 (2d Cir. 1973); *Chubb Integrated Sys. Ltd. v. National Bank,* 103 F.R.D. 52, 63 (D.D.C. 1984). Voluntary disclosure to a third party implies a waiver of all communications on the same subject. *Hartz Mountain Indus. v. Commissioner,* 93 T.C. at 526; *Chubb Integrated Sys. Ltd. v. National Bank, supra* at 63. Accord-

---

[6] Respondent's concession is curious in light of the fact that petitioners did not claim attorney-client privilege with respect to this document. We will treat respondent's statement on brief as conceding that document No. 39 is protected by the work product doctrine, absent a waiver by petitioners.

[7] Federal law does not recognize an accountant-client privilege. *Couch v. United States,* 409 U.S. 322, 335 (1973).

ingly, unless petitioners engaged Mr. Ryan to assist their attorneys in providing them with legal advice, the attorney-client privilege will not attach to Mr. Ryan's communications to petitioners' attorneys (or to their communications to him).

The majority of petitioners' privilege claims relate to documents produced by Mr. Ryan during the IRS's audit of petitioners. Mr. Ryan was no doubt acting as petitioners' representative when he communicated with their attorneys. If, however, Mr. Ryan was petitioners' primary representative, and his communications with petitioners' attorneys were incidental to his representation of petitioners, the attorney-client privilege does not attach to such communications.[8] *United States v. Kovel,* 296 F.2d 918, 922 (2d Cir. 1961) ("If what is sought is not legal advice but only accounting service * * * or if the advice sought is the accountant's rather than the lawyer's, no privilege exists."). In the instant case, the record shows that Mr. Ryan was performing accounting services on behalf of petitioners, and that such services included representing petitioners before the IRS.[9] If we were to allow petitioners to cloak the services of their accountant in the robe of the attorney-client privilege in the instant case merely because the accountant communicated with petitioners' attorneys during the course of an audit (an audit which the accountant was responsible for conducting), the privilege would be expanded beyond the parameters of its logic. Accordingly, we hold that log Nos. 13, 16–18, 20–22, 24, 26–27, 29–36, and 40–45 are not protected from discovery by the attorney-client privilege.

Log No. 15 is a letter from Mr. Paster to petitioner Bradford C. Bernardo. Log No. 19 is a letter from Mr. McCarthy to petitioner Bradford C. Bernardo regarding the charitable contribution deduction claimed for the donation of Omphalos to the authority. Log No. 37 is a letter from Mr. E. Hans Lundsten, a partner in Adler, Pollock & Sheehan, to Mr. Joseph Houlihan[10] regarding petitioners' Federal income tax

---

[8] Conversely, if the attorney is the primary representative of the taxpayer, and the attorney-accountant communications are incidental to the attorney's representation of the client, the attorney-client privilege may attach and protect such communications from discovery. *United States v. Kovel, supra* at 922.

[9] Mr. Ryan was petitioners' authorized representative during the IRS's audit of petitioners' Federal income tax returns for the taxable years in issue in the instant case.

[10] Documents in the record indicate that Mr. Houlihan is an attorney with the law firm of Corcoran, Peckham & Hayes, and that he represented petitioner Marybeth Bernardo during her

returns. Log Nos. 15 and 19 constitute privileged attorney-client communications and are not subject to discovery. Similarly, log No. 37 is also protected from discovery by the attorney-client privilege.[11]

Log No. 23 is a letter from Mr. McCarthy to "Jean", a secretary employed by Providence Granite Co. Log No. 25 is a letter from Mr. DeMaria to "Jean" of Providence Granite Co. Log No. 28 is also a letter by Mr. Ryan to "Jean" of Providence Granite Co. Jean was not petitioners' agent. Consequently, we hold that log Nos. 23, 25, and 28 are not protected by the attorney-client privilege.

Log No. 10 is a letter from Mr. Paster to Mr. Linsner regarding an "estimate of course of materials for sculpture." Log No. 12 is a draft appraisal of Omphalos prepared by Mr. Linsner. Mr. Paster stated that he engaged Mr. Linsner on "behalf of petitioner Marybeth Bernardo." Mr. Linsner was under Mr. Paster's direct supervision and control. Accordingly, we find that Mr. Paster engaged Mr. Linsner to assist him in providing legal advice to petitioners and that log Nos. 10 and 12 are protected by the attorney-client privilege, absent a waiver of the privilege by petitioners.

Materials provided by a taxpayer to his attorney for tax preparation purposes are intended to be disclosed to the IRS in the taxpayer's return. Consequently, under such circumstances, the taxpayer is considered to have waived the attorney-client privilege as to such information. See, e.g., *United States v. Lawless,* 709 F.2d 485, 487–488 (7th Cir. 1983); *United States v. Cote,* 456 F.2d 142, 144–145 (8th Cir. 1972); *Colton v. United States,* 306 F.2d 633, 638 (2d Cir. 1962); *Olender v. United States,* 210 F.2d 795, 806 (9th Cir. 1954). In the instant case, Mr. Paster engaged Mr. Linsner on behalf of petitioners, who, in turn, attached Mr. Linsner's appraisal of the fair market value of Omphalos to their 1986 Federal income tax return.[12] By disclosing Mr. Linsner's

---

divorce from petitioner Bradford C. Bernardo.

[11] Petitioners have joint representation in the instant proceeding. Consequently, we do not view the disclosure of information regarding petitioners' Federal income tax returns to Mr. Houlihan as a voluntary disclosure of privileged information to a third party.

[12] The petition in the instant case states:

5. The facts upon which Petitioners rely, as the basis of Petitioners' case, are as follows:

(a) On December 23, 1986, the Petitioner, Marybeth B. Bernardo, pursuant to a Deed of Gift transferred to the MASSACHUSETTS BAY TRANSIT AUTHORITY ("MBTA") title to the 21 foot granite sculpture, *OMPHALOS,* which had been created by the sculptor, Dimitri Hadzi. At

appraisal on their 1986 Federal income tax return, petitioners waived the attorney-client privilege with respect to log Nos. 10 and 12. *United States v. Cote, supra* at 144–145; *Hartz Mountain Indus. v. Commissioner,* 93 T.C. at 526; *Chubb Integrated Sys. Ltd. v. National Bank,* 103 F.R.D. at 63.

### 2. *Work Product*

The work product doctrine protects documents, interviews, statements, memoranda, correspondence, briefs, mental impressions, and tangible things prepared by an attorney in anticipation of litigation or trial. *Hickman v. Taylor,* 329 U.S. 495, 510–511 (1947); *Hartz Mountain Indus. v. Commissioner, supra* at 526–527; *Branerton Corp. v. Commissioner,* 64 T.C. at 198; *P.T. & L. Constr. Co. v. Commissioner,* 63 T.C. 404, 408 (1974). Litigation is frequently anticipated prior to the time a lawsuit is actually commenced. To show that a document was prepared in anticipation of litigation "A litigant must demonstrate that the documents were created 'with a specific claim supported by concrete facts which would likely lead to [the] litigation in mind,' not merely assembled in the ordinary course of business or for other nonlitigation purposes." *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.,* 5 F.3d at 1515 (quoting *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 865 (D.C. Cir. 1980)).

The scope of the protection provided by the work product doctrine is broader than the protection afforded by the attorney-client privilege. *Id.* The work product doctrine protects documents and other materials prepared in anticipation of litigation by a representative of a party, regardless of

---

the time of the gift the sculpture was on loan from the Petitioner, Marybeth B. Bernardo, to the MBTA and was located in Harvard Square, Cambridge, Massachusetts.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) Petitioners received an appraisal dated 20 February, 1987 from Kenneth Jay Linsner which stated, based on his academic and experiential qualifications and as a result of research conducted by him "through the collection of verifiable sales data as directed under sec. 170A–1(a)(2)(ii)(e) of the Income Tax Regulations," that the fair market value of the sculpture as of December 1986 was $593,000.

(d) Based on the appraisal Petitioners claimed on their 1986 Joint U.S. Individual Income Tax Return a charitable gift of $593,000 and attached to that return IRS Form 8283, "Noncash Charitable Contribution", which described this gift and stated that the appraised value of the gift was $593,000. Part III of that form, entitled "Certification of Appraiser" which verified the appraised value of this gift, was signed by Mr. Linsner.

whether the representative was retained by the party directly or by his attorney. See Fed. R. Civ. P. 26(b)(3) (extending protection to "documents and tangible things * * * prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent)");[13] *Branerton Corp. v. Commissioner, supra* at 198; *Carver v. Allstate Ins. Co.,* 94 F.R.D. 131, 133 (S.D. Ga. 1982); *Westhemeco, Ltd. v. New Hampshire Ins. Co.,* 82 F.R.D. 702, 708 (S.D.N.Y. 1979), modified on other grounds *Commercial Union Ins. Co. v. Albert Pipe & Supply Co.,* 484 F. Supp. 1153 (S.D.N.Y. 1980).

Respondent contends that only documents prepared after the notice of deficiency was issued to petitioners were prepared in anticipation of litigation. We disagree. Once the IRS informed petitioners that its Art Advisory Panel concluded that Omphalos had a fair market value that was substantially less than the charitable contribution deduction petitioners claimed on their 1986 Federal income tax return, it was reasonable for petitioners and their representatives to anticipate litigation concerning those deductions. Log Nos. 16–22, 24, 26–27, 29–40, and 42–45 were prepared by petitioners or their representatives after the IRS informed petitioners of the Art Advisory Panel's findings. Consequently, we conclude that such documents were prepared in anticipation of litigation and are protected by the work product doctrine.[14]

---

[13] We have not adopted a corresponding rule to Fed. R. Civ. P. 26(b)(3), but the explanatory note to Tax Court Rule 70(b) states:

With certain exceptions and subject to the limitations of these Rules, the scope of allowable discovery under these Rules is intended to parallel the scope of allowable discovery under the Federal Rules. * * * The other areas, i.e., the "work product" of counsel and material prepared in anticipation of litigation or for trial, are generally intended to be outside the scope of allowable discovery under these Rules, and therefore the specific provisions for disclosure of such materials in FRCP 26(b)(3) have not been adopted. Cf. *Hickman v. Taylor,* 329 U.S. 495 (1947). [60 T.C. 1098.]

[14] The work product doctrine also protects documents prepared in anticipation of another trial or litigation, regardless of whether the documents are directly related to the case at bar. Wright et al., Federal Practice and Procedure, sec. 2024, at 351 (2d ed. 1994). Log Nos. 18, 22, 24, 26, 30–31, 33, and 35 are letters from Mr. McCarthy or Mr. DeMaria sent directly to Mr. Ryan or letters sent by them to other persons, with copies sent to Mr. Ryan. Log No. 44 was prepared by Mr. Houlihan. All of the documents prepared by Messrs. Ryan, DeMaria, McCarthy, and Houlihan concern the IRS's audit of petitioners' Federal income tax returns. Based on the record in the instant case, we conclude that documents produced by Messrs. Ryan, DeMaria, McCarthy, and Houlihan were prepared in anticipation of litigation; i.e., either for the instant litigation or in anticipation of any litigation that might have resulted from petitioners' divorce.

Log Nos. 10–13 were prepared prior to the date the IRS notified petitioners of the Art Advisory Panel's findings. Consequently, we find that log Nos. 10–13 were not prepared in anticipation of litigation and are therefore not protected from discovery by the work product doctrine. Log No. 27 gives no indication as to the contents of the letter. Consequently, petitioners have failed to prove that log No. 27 is work product.

Log Nos. 23, 25, and 28 are letters to "Jean", a secretary employed by Providence Granite Co., and are by Mr. McCarthy, Mr. DeMaria, and Mr. Ryan, respectively. Jean was neither petitioners' agent nor their representative. Consequently, we conclude that log Nos. 23, 25, and 28 are not work products.

Respondent, relying on *Radiant Burners, Inc. v. American Gas Association,* 207 F. Supp. 771, 776 (N.D. Ill. 1962), revd. on other grounds 320 F.2d 314 (7th Cir. 1963), also contends that the protection afforded by the work product doctrine may only be claimed by the attorneys who actually prepared or supervised the preparation of the documents the other party is seeking to discover. Respondent argues that petitioners have not introduced affidavits or any other evidence showing that Messrs. DeMaria, McCarthy, and Houlihan object to production of the documents listed above. In *Radiant Burners,* the court merely stated that the fact that the client was a corporation did not prevent its attorney from invoking the work product doctrine. The court in *Radiant Burners* did not state that the attorney who actually prepared the documents sought by the discovering party was the only person entitled to claim the protection afforded by the work product doctrine. Accordingly, we find respondent's reliance on *Radiant Burners* to be misplaced.

### 3. *Implied Waiver of Attorney-Client Privilege and Work Product*

Finally, respondent, relying on *Karme v. Commissioner,* 73 T.C. 1163 (1980), affd. on other grounds 673 F.2d 1062 (9th Cir. 1982), contends that, by filing a petition with this Court, petitioners have waived both the attorney-client privilege and work product doctrine with respect to all subjects set forth in the petition. In *Karme,* we held, inter alia, that the

documents the taxpayers sought to withhold were not protected by the attorney-client privilege. Our holding was based on the fact that the documents the taxpayers sought to protect did not contain legal advice or summaries of confidential communications the taxpayers made to their attorneys. *Id.* at 1183. We also stated that, even assuming that the documents were protected by the attorney-client privilege, the taxpayers had waived the privilege because they, along with the attorneys who structured the transactions for the taxpayers, had testified at trial about some of the transactions in issue, and, therefore, they had waived the privilege with respect to all of the transactions in issue. *Id.* at 1183–1184.

We then stated:

> by taking the affirmative step of petitioning this Court for a redetermination of respondent's finding of deficiency, petitioners have waived the privilege. By challenging respondent's determination that in substance petitioners did not make an interest payment, petitioners thereby put the substance of these transactions (including all the underlying facts which petitioners claim are protected) in issue. * * * [*Id.* at 1184; citation omitted.[15]]

In *Karme,* we relied on *Hearn v. Rhay,* 68 F.R.D. 574 (E.D. Wash. 1975), as support for our statement that a taxpayer, by filing a petition with this Court, impliedly waives the attorney-client privilege with respect to the transactions in issue. Other courts, relying on the rationale of *Hearn v. Rhay, supra,* have held that the attorney-client privilege is impliedly waived when the party claiming the privilege raises an issue as to its own knowledge, intent, state of mind, or the reasonableness of its actions, etc. When a party raises the issue of its own knowledge or state of mind as the basis for a claim or defense in an action, courts, relying on *Hearn,* have frequently held that such party impliedly waives the privilege as to attorney-client communications because such communications may be the only probative evidence of the party's state of mind or knowledge, and therefore, it would be unfair to the other party to deny access to such communications. See, e.g., *United States v. Bilzerian,* 926 F.2d 1285,

---

[15] In *Karme v. Commissioner,* 73 T.C. 1163 (1980), affd. on other grounds 673 F.2d 1062 (9th Cir. 1982), we did not address the issue of whether the taxpayers impliedly waived the protection afforded by the work product doctrine merely by filing a petition with this Court. Consequently, respondent's contention that petitioners waived any protection provided by the work product doctrine by filing a petition in the instant case is wholly without merit.

1292 (2d Cir. 1991); *Conkling v. Turner,* 883 F.2d 431, 434 (5th Cir. 1989); *Greater Newburyport Clamshell Alliance v. Public Serv. Co.,* 838 F.2d 13, 22 (1st Cir. 1988); *Afro-Lecon, Inc. v. United States,* 820 F.2d 1198, 1204 (Fed. Cir. 1987); *GAB Business Servs., Inc. v. Syndicate 627,* 809 F.2d 755 (11th Cir. 1987); *United States v. Exxon Corp.,* 94 F.R.D. 246, 248–249 (D.D.C. 1981).[16]

As petitioners have yet to affirmatively raise a claim[17] that can only be effectively disproven through the discovery of attorney-client communications, we hold that petitioners have not impliedly waived the attorney-client privilege.

## Petitioners' Motion To Compel

Petitioners served respondent with a request for the production of documents along with a set of interrogatories. Respondent timely served petitioners with a response to petitioners' request for the production of documents and a response to petitioners' interrogatories. Subsequently, petitioners filed a motion to compel the production of documents and to compel a response to their interrogatories pursuant to Rules 71(c), 72(b), and 104(b). Respondent was directed to file a response to petitioners' motion to compel at the hearing set for respondent's motion to compel discussed *supra.* At the hearing, respondent filed an objection to petitioners' motion to compel along with a motion for a protective order.

As stated above, Rule 70(b) provides that "The information or response sought through discovery may concern any matter not privileged and which is relevant to the subject matter involved in the pending case." The party opposing the production of information has the burden of establishing that the documents sought by the other party are not relevant, or that they are otherwise not discoverable. *Rutter v. Commissioner,* 81 T.C. at 948; *Branerton Corp. v. Commissioner,* 64 T.C. at 193; *Hospital Corp. of America v. Commissioner,* T.C. Memo. 1994–100. Accordingly, respondent bears the burden

---

[16] Once the client impliedly waives the attorney-client privilege by raising a claim or defense that places his state of mind or knowledge in issue, the client is deemed to have waived the privilege with respect to all attorney-client communications reflecting on its state of mind or knowledge. See *United States v. Exxon Corp.,* 94 F.R.D. 246, 249 (D.D.C. 1981).

[17] The penalties determined in the notice of deficiency, although refuted in the petition, do not appear to raise any question as to petitioners' state of mind.

of showing that the documents sought by petitioners are not relevant or privileged.

Respondent contends that all documents that are contained in the files of respondent's counsel have been provided to petitioners except the following: (1) The internal notes of counsel; (2) draft statutory notices of deficiency that were never issued to petitioners; (3) a memorandum written by an Appeals officer in response to counsel's comments about the draft statutory notices of deficiency; and (4) two pages of notes by the Art Advisory Panel. We address each of the foregoing items separately.

### 1. *Internal Notes of Counsel*

Respondent contends that the notes of counsel assigned to litigate the instant case are protected from discovery because they constitute an attorney's work product. The work product doctrine protects documents, interviews, statements, memoranda, correspondence, briefs and mental impressions, and tangible items prepared by attorneys in anticipation of litigation. *Hickman v. Taylor,* 329 U.S. at 510–511; *Hartz Mountain Indus. v. Commissioner,* 93 T.C. at 526–527; *Branerton Corp. v. Commissioner, supra* at 198. We hold that the notes of respondent's counsel are work product and are not subject to discovery.

### 2. *Draft Notices of Deficiency*

Respondent contends that the draft notices of deficiency are not relevant to the issues for decision in the instant case. Under Rule 70(b) a party may seek discovery of information even if the information sought would not be admissible at trial as long as the information or response sought is reasonably calculated to lead to the discovery of admissible evidence. *P.T. & L. Constr. Co. v. Commissioner,* 63 T.C. at 414.

The issues for decision in the instant case include the issue of whether petitioners are entitled to claim a charitable contribution deduction for their donation of the sculpture Omphalos to the authority, and, if so, the amount of the deduction petitioners are entitled to claim. We are not persuaded that the discovery of the draft statutory notices of deficiency would lead to the discovery of admissible evidence

Accordingly, we hold that respondent is not required to produce the draft statutory notices of deficiency.

### 3. *Appeals Officer's Memorandum*

Respondent contends that the Appeals officer's memorandum is protected from discovery by the work product doctrine. Generally, documents prepared by the revenue agents and Appeals officers during the course of an investigation are not considered to have been prepared in anticipation of litigation, and therefore, such documents are not considered work product. *Branerton Corp. v. Commissioner, supra* at 198. If, however, the document is prepared by a revenue agent or Appeals officer at the direction of an attorney, then such documents may, in certain circumstances, be prepared in anticipation of litigation. *Id.* According to respondent, the Appeals officer's memorandum was prepared in response to the comments of respondent's counsel concerning the draft statutory notices of deficiency. Because the memorandum was prepared in response to the comments of respondent's counsel and subsequent to the decision of the Art Advisory Panel, we hold that it was prepared in anticipation of litigation and therefore constitutes work product. Consequently, respondent is not required to provide petitioners with a copy of the Appeals officer's memorandum.

### 4. *Art Advisory Panel Notes*

Respondent contends that the Art Advisory Panel's notes are not discoverable because they "contain purely predecisional, deliberative statements that * * * fall directly within the governmental privilege." In *P.T. & L. Constr. Co. v. Commissioner, supra* at 410, we held that "executive privilege, unlike the work product doctrine, does not protect *all* opinions, conclusions, mental impressions, and thought processes of governmental officials." Statements that a governmental official "would hesitate to make for fear of disclosure to the public" may be protected by the doctrine of executive privilege. *Id.* In holding that the doctrine of executive privilege is not absolute, we stated:

[executive] privilege is qualified in that it recognizes there are instances in which justice will require disclosure of such material. A balancing of interests is required; the gravity of the individual's need for disclosure

must be weighed against the harm that disclosure may do to intragovernmental candor. [*Id.* at 409.]

The Art Advisory Panel (panel) was first authorized by the Secretary of the Treasury in 1968, and the panel is now composed of 25 prominent art specialists and authorities who are charged with assisting the IRS in determining the authenticity and fair market value of works of art. According to 2 Audit, Internal Revenue Manual (CCH), sec. 42(16)4.2, at 7347–4, any income tax case involving a claimed value for a single work of art of $20,000 or more must be referred to the National Office for consideration by the panel. The panel's meetings are closed to the public in order to prevent the disclosure of confidential tax return information.[18]

As stated above, executive privilege is designed to protect the candor of intragovernmental communications. The panel's meetings are closed to the public in order to protect the confidentiality of the information provided to the panel by taxpayers and not to insure the candor of intragovernmental communications.[19] Accordingly, we hold that the panel's notes concerning its valuation of Omphalos are not protected by executive privilege from discovery by the taxpayers whose appraisal is under consideration by the panel. Consequently, we hold that respondent must provide the panel's notes to petitioners.

In addition to the documents listed above, respondent has not produced documents, or answered interrogatories, that "are fully responsive" to the following requests for documents or information contained in petitioners' discovery requests:

(1) All documents referring, regarding, or relating to any of Dimitri Hadzi's sculptures, including but not limited to appraisals of the Art Advisory Panel regarding his work;

---

[18] The Annual Summary Report For 1991 Of Closed Meeting Activity Of The Art Advisory Panel Of The Commissioner Of The Internal Revenue Service states:

All meetings were closed to the public by determination of the Commissioner that the substantive discussions and records of the Panel dealt with value of works of art involved in federal tax returns and are thus concerned with matters listed in section 552b(c)(3), (4), (6), and (7) of Title 5 of the United States Code. Consequently, the meetings at which such matters are discussed and the records of such meetings should not be open to the public. This is necessary to protect the confidentiality of tax returns under section 6103 of Title 26 of the United States Code.

[19] Respondent has made no attempt to demonstrate that the candor of the Art Advisory Panel's discussions will be damaged as a result of the disclosure of the panel's notes concerning its valuation of Omphalos.

(2) all appraisals of the Art Advisory Panel of granite sculptures since 1980;

(3) all appraisals of the Art Advisory Panel of so-called monumental works of art since 1980;

(4) curricula vitae of all members of the Art Advisory Panel who participated in the appraisal of Omphalos;[20]

(5) all documents referring to, regarding, or relating to the qualifications of Kenneth J. Linsner to render professional art appraisal advice and services;

(6) all documents referring to, regarding, or relating to any art appraisals by Kenneth J. Linsner or about his art;

(7) documents regarding the scope and nature of any services performed by Kenneth J. Linsner for or on behalf of the Internal Revenue Service since 1980;

(8) reports since 1980 summarizing the closed meetings of the Art Advisory Panel;

(9) the identity of every person who has knowledge of the value of Dimitri Hadzi's sculpture, Omphalos, or any other sculptures, including but not limited to all persons on the Art Advisory Panel, and describing in detail the knowledge of such person.

Respondent contends that petitioners' requests are overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, protected by executive privilege, and constitute an attempt by petitioners to go behind the notice of deficiency. In support of respondent's contention that satisfying petitioners' requests would be unduly burdensome, respondent submitted an affidavit by Ms. Karen E. Carolan, chief of the IRS's Art Advisory Services Section and chair of the Art Advisory Panel. According to Ms. Carolan's affidavit, the panel's records are not computerized, and the panel does not index records that identify documents by artist, materials used in the art, or the size of the art. As to petitioners' requests that are not limited to the work of the panel, Ms. Carolan's affidavit states that the Commissioner keeps no central file or computerized file wherein the information petitioners seek could be readily located. According to Ms. Carolan, complying with petition-

---

[20] Respondent contends that the background and qualifications of each of the panel members who participated in the appraisal of Omphalos were included in the appraisal report already provided to petitioners.

ers' requests "would entail making a nationwide search of all records, of all examinations, since 1980."

We agree with respondent's contention that petitioners' requests are overly broad and unduly burdensome. Moreover, we do not believe that the furnishing of such information is reasonably calculated to lead to the discovery of admissible evidence. In light of the breadth of the search respondent would have to conduct in order to satisfy petitioners' requests, and the unlikelihood that the production of the documents sought by petitioners would lead to the discovery of admissible evidence, we hold that, with the exception of petitioners' request No. 8, respondent is not required to produce the documents or the information sought in the requests listed above. To the extent that the information sought in request No. 8 may be provided without disclosure of confidential materials, respondent is directed to provide petitioners with such information.

Based upon the foregoing,

*An appropriate order will be issued.*