61 F.3d 901
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Vickie Ann JACOBS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose Angel PEREZ, a/k/a Angel, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Francisco GALINDO, Jr., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marciano Levya MORIN, Jr., a/k/a Mikey, a/k/a Macky, a/k/a
Rocky, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alberto PEREZ, a/k/a Kiko, Defendant-Appellant.
 Nos. 94-5055, 94-5303, 94-5314, 94-5315, 94-5333.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 7, 1995.
Decided: July 25, 1995.
 
 ARGUED: William Dupree Spence, Kinston, NC; Charles Christopher Henderson, Trenton, NC; William Lee Davis, III, Lumberton, NC, Wayne James Payne, Powell & Payne, Shallotte, NC, for Appellants. John Douglas McCullough, Assistant United States Attorney, Raleigh, NC, for Appellee. ON BRIEF: Janice McKenzie Cole, United States Attorney, Raleigh, NC, for Appellee.
 Before MURNAGHAN, NIEMEYER, and HAMILTON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 In this consolidated appeal, appellants, Jose Perez (Jose), Alberto Perez (Alberto), Francisco Galindo (Galindo), Vickie Jacobs (Jacobs), and Marciano Morin (Morin) appeal the judgment entered by the district court in their respective cases. For the reasons stated in this opinion, the judgments of the district court with respect to Jose, Alberto, Morin, and Jacobs are affirmed. The judgment with respect to Galindo is affirmed in part and reversed in part.
 
 
 2
 * This case involved a conspiracy to possess with intent to distribute marijuana and cocaine from January 1989 until June 1993. The conspiracy was headed by Jose, with Galindo serving as a marijuana and cocaine supplier to Jose. Alberto and Morin assisted Jose with the packaging and distribution of marijuana and cocaine. Jacobs assisted in the maintenance of records of various transactions, wired money, and paid bills utilizing proceeds of the conspiracy.
 
 
 3
 On June 22, 1993, a federal grand jury sitting in the Eastern District of North Carolina returned a five-count indictment charging the appellants, among others, with conspiracy to possess with intent to distribute cocaine and marijuana (count one), see 21 U.S.C. Secs. 841(a)(1) and 846. Count two charged Galindo with interstate travel to promote an unlawful activity, namely the distribution of cocaine and marijuana, see 18 U.S.C. Sec. 1952(a). Count three charged Jose, Galindo, and a co-conspirator with interstate travel to promote an unlawful activity, see id., while count four pertained to a coconspirator who pleaded guilty prior to trial. Count five charged Jose and Jacobs with possession of a firearm during a drug trafficking crime, see 18 U.S.C. Sec. 924(c).
 
 
 4
 At trial, the district court dismissed count three of the indictment as it pertained to Jose and Galindo. The appellants were convicted of the remaining counts, with one exception: Jacobs was acquitted of the firearm count. Jose was sentenced to life imprisonment on count one and a consecutive sixty-month sentence on count five; Galindo was sentenced to ninety-seven months' imprisonment on count one and received a concurrent sixty-month sentence on count two; Morin was sentenced to 292 months' imprisonment; and Alberto and Jacobs were sentenced to thirty and thirty-three months' imprisonment, respectively. The appellants noted a timely appeal.
 
 II
 
 5
 On appeal, the appellants raise numerous assignments of error, only a few of which merit discussion.
 
 
 6
 * The appellants assert that the district court committed reversible error when it admitted copies of Western Union wire transfers which were identified by Special Agent Peters of the FBI who had served a subpoena on the company for these records.
 
 
 7
 Rule 803(6) of the Federal Rules of Evidence provides that records kept in the normal course of business constitute an exception to the hearsay rule. The rule renders admissible:
 
 
 8
 [a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. Rule 803(6) serves to "avoid the burdensome process of 'producing as witnesses, or accounting for the nonproduction of, all participants in the process of gathering and transmitting, and recording information.' " United States v. Keplinger, 776 F.2d 678, 693 (7th Cir.1985) (quoting Notes of Advisory Committee on Proposed Rule 803), cert. denied, 476 U.S. 1183 (1986)). Under Rule 803(6), a custodian or an otherwise "qualified witness" can lay the evidentiary foundation to ensure the records' trustworthiness. A "qualified witness" is not required to have "personally participated in or observed the creation of the document," United States v. Moore, 791 F.2d 566, 574 (7th Cir.1986), or have known who actually recorded the information, United States v. Dominguez, 835 F.2d 694, 698 (7th Cir.1987); rather, the term "qualified witness" has been interpreted broadly, as requiring only someone who understands the system used to record and maintain the information. Moore, 791 F.2d at 574-75. "The witness need only be someone with knowledge of the procedure governing the creation and maintenance of the type of record sought to be admitted," Dominguez, 835 F.2d at 698, and the law is settled that a law enforcement agent may act as a "qualified witness," see United States v. Hathaway, 798 F.2d 902 (6th Cir.1986) (stating FBI agent familiar with records sufficient); see also United States v. Franco, 874 F.2d 1136, 1139-40 (7th Cir.1989) (stating narcotics agent could authenticate money exchange records); United States v. Chappell, 698 F.2d 308, 311-12 (7th Cir.) (stating former employees and SEC agent sufficient to authenticate), cert. denied, 461 U.S. 931 (1983).
 
 
 9
 In this case, Special Agent Terry Peters did not testify that he was familiar with the creation and maintenance of the records prepared by Western Union; rather, he testified that he subpoenaed the records from Western Union. He, therefore, was not a "qualified witness" within the meaning of Rule 803(6). Consequently, the evidence was not admissible under Rule 803(6).
 
 
 10
 It is clear, however, that the wire transfers were admissible under the "catch-all" exception to the hearsay rule, Rule 803(24). Courts have essentially held harmless erroneous Rule 803(6) rulings where the evidence would have been admissible under the "catch-all" exception to the hearsay rule, Rule 803(24). See, e.g., Karme v. C.I.R., 673 F.2d 1062 (9th Cir.1982). In Karme, the tax court admitted into evidence records of a Netherlands Antilles bank provided by the bank pursuant to the Tax Convention. Id. at 1064. The tax court admitted the records under Rule 803(6) through the testimony of an IRS agent who microfilmed the documents. Id. On appeal, the court explained that the records were not admissible under Rule 803(6) because the IRS agent did not testify "that the records were kept in the course of regularly conducted business activity." Id. The Ninth Circuit, however, went on to hold that the evidence was admissible under Rule 803(24) because the records were both material and probative, and there was nothing in the record to suggest that the bank records were anything other than what they purported to be. Id. at 1065. Likewise, the wire transfers admitted in this case were both material and probative and the interests of justice were well served by their admission. Furthermore, there is nothing in the record to suggest that the documents were other than what they purported to be; indeed counsel for the appellants conceded that the records were from Western Union. For these reasons, we see no error in the admission of the wire transfers.
 
 B
 
 11
 The district court admitted a letter addressed to Jacobs written by Alicia Ocanus. In this letter, Ocanus pleads for money from Jose and Jacobs, stating she is owed money for activities that Alicia and some other party engaged in which caused them to risk their lives. In the letter, Ocanus also states that if Jose does not "want us to work with him no more, fine, but we need our money." (J.A. 279). Ocanus was not called to the stand to authenticate the letter, although the letter had her return address and telephone number, as well as a postmark.
 
 
 12
 Jacobs contends that the letter was not properly authenticated under Rule 901. This argument has no merit. A letter's physical appearance, postmark, return address, and contents may in combination establish authenticity. 5 J. Weinstein and M. Burger, Weinstein's Evidence Sec. 901(b)(4), p. 901-67 (1991). Here, the letter's physical appearance and contents were sufficient to establish its authenticity under Rule 901. See United States v. Reyes, 798 F.2d 380, 383 (10th Cir.1986).
 
 
 13
 Jacobs also contends that the letter amounted to inadmissible hearsay. We disagree. At the time the letter was admitted at trial, there was a preponderance of evidence in the record establishing that Ocanus was a member of the conspiracy; therefore, the letter was admissible as a coconspirator's statement made "during the course and in furtherance of the conspiracy." See Fed.R.Evid. 801(d)(2)(E).
 
 C
 
 14
 Jose contends his conviction for using a firearm during and in relation to a drug trafficking crime, 18 U.S.C. Sec. 924(c), should be reversed based on insufficiency grounds. In this case, a loaded 9 millimeter pistol was found in Jose's bedroom along with $9,000 and a quantity of marijuana. More marijuana was found in automobiles outside Jose's house as was one pound of cocaine, and records of drug transactions were also found throughout the house.
 
 
 15
 The standard of review for determining whether there was sufficient evidence to support this conviction is whether a reasonable trier of fact, viewing the evidence in the light most favorable to the government, could rationally find Jose guilty beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979). The elements of using and carrying a weapon in relation to a drug trafficking crime are: (1) knowing use of a firearm (2) during and in relation to a drug trafficking crime. United States v. Paz, 927 F.2d 176, 179 (4th Cir.1991). There is no requirement that the firearm be brandished or displayed; rather, the firearm must be present to facilitate the success of the criminal undertaking. United States v. Brockington, 849 F.2d 872, 876 (4th Cir.1988). Here, there is little question that the firearm was present and readily accessible, and helped facilitate the success of the criminal undertaking. Consequently, the conviction must be affirmed. See Paz, 927 F.2d at 179.
 
 D
 
 16
 Count two of the indictment charged Galindo with interstate travel (in or about February 1992) to promote an unlawful activity, namely, the distribution of cocaine and marijuana, see 18 U.S.C. Sec. 1952(a). The Travel Act provides in part:
 
 
 17
 (a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with the intent to--
 
 
 18
 (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,
 
 
 19
 and thereafter performs or attempts to perform any of the acts specified in subparagraph[ ] ... (3) shall be fined not more than $10,000 or imprisoned not more than five years, or both.
 
 
 20
 18 U.S.C. Sec. 1952(a). For the government to convict Galindo under this section, it was required to prove, beyond a reasonable doubt, that: (1) Galindo travelled in interstate commerce or used facilities in interstate commerce; (2) the travel was done with the specific intent to further the unlawful activities of distribution of cocaine and marijuana; and (3) Galindo, after such travel, performed, or attempted to perform, one or more acts to distribute cocaine and marijuana as charged in the indictment. See United States v. Schocket, 753 F.2d 336, 340 (4th Cir.1985). We have made clear, as have other courts, that there must be some action taken after the travel to establish a Sec. 1952(a) violation. See United States v. Porter, 821 F.2d 968, 975 (4th Cir.1987) ("Intent alone does not satisfy the requirements of 18 U.S.C. Sec. 1952. The government must prove that Porter performed or attempted to perform an act in furtherance of illegal activity after he arrived in Georgia."), cert. denied, 485 U.S. 934 (1988); see also United States v. Zolicoffer, 869 F.2d 771 (3d Cir.), cert. denied, 490 U.S. 1113 (1989); United States v. Vanichromanee, 742 F.2d 340, 349 (7th Cir.1984). That is not to say that the government must prove the commission of an illegal act in furtherance of the illegal activity, see United States v. Griffin, 699 F.2d 1102, 1106 (11th Cir.1983), but, at a minimum, the government must prove some conduct after the interstate travel that furthers the illegal activity, Zolicoffer, 869 F.2d at 775.
 
 
 21
 At trial, the government proved that, in February 1992, Galindo was arrested in Wilmington, North Carolina for driving while intoxicated, was bailed out by a coconspirator, and dropped off at a hotel in which Jacobs had rented a room. There was also evidence introduced at trial that Jacobs wired money to Galindo in mid-January 1992. The government's theory was that, based on Galindo's role as a supplier to Perez and the wire transfer in mid-January 1992, the jury could infer that Galindo performed, or attempted to perform, acts to distribute cocaine and marijuana in North Carolina in February 1992. We disagree.
 
 
 22
 There was no evidence introduced at trial demonstrating an act that Galindo performed in North Carolina in February 1992 to further the distribution of cocaine and marijuana. In Porter, we explained that the government had to prove that the defendant performed or attempted to perform an act in furtherance of illegal activities after he arrived in the state to which the defendant travelled. Porter, 821 F.2d at 975. The evidence in Porter demonstrated that the defendant travelled to Georgia for the purpose of acquiring drugs being delivered by boat; however, the defendant did not obtain any drugs because the boat failed to arrive. Id. We held that intent alone does not satisfy the requirements of the Travel Act and the government was required to prove an act in furtherance of the unlawful activity in the state to which the defendant travelled. Id.
 
 
 23
 We believe Galindo's conviction on count two should be reversed. The government failed to offer any evidence, let alone sufficient evidence, of an act performed by Galindo in North Carolina in February 1992 in furtherance of the unlawful activity of distribution of cocaine and marijuana. Our conclusion is bolstered by the fact this case differs markedly from other cases in our circuit in which we upheld Travel Act convictions. For example, in United States v. Rawle, 845 F.2d 1244 (4th Cir.1988), we upheld a Travel Act conviction where the evidence demonstrated that the defendant loaded trucks with marijuana and drove back from out of state to South Carolina. Id. at 1248-49. Similarly in United States v. Lozano, 839 F.2d 1020 (4th Cir.1988), we upheld a Travel Act conviction where the evidence demonstrated that the defendant travelled to Virginia, spent the weekend there, and paid a third party $10,000, inferably for a prior cocaine purchase. Id. at 1022-23. As distinguished from the conduct in Rawle and Lozano, the government cannot point to any act performed by Galindo in North Carolina in February 1992 in furtherance of the unlawful activity of distribution of cocaine and marijuana. For this reason, Galindo's Travel Act conviction is reversed.*
 
 III
 
 24
 The appellants raise numerous other contentions which they contend should be resolved in their favor. We have reviewed these contentions and find them to be without merit. Accordingly, for the reasons stated in this opinion, the judgments of the district court with respect to Jose, Alberto, Morin, and Jacobs are affirmed. The judgment with respect to Galindo is affirmed in part and reversed in part.
 
 No. 94-5303--AFFIRMED
 
 25
 No. 94-5314--AFFIRMED IN PART AND REVERSED IN PART No. 94-5315--AFFIRMED
 
 No. 94-5333--AFFIRMED
 No. 94-5055--AFFIRMED
 
 
 *
 Galindo was sentenced to ninety-seven months' imprisonment on count one and to a concurrent term of sixty months on count two. Reversal of Galindo's conviction on count two does not alter Galindo's sentence; for this reason, we see no need to remand this case for resentencing